SMITH, JR., ET AL. v. SMITH.

1. HUSBAND AND WIFE.

A husband has power to dispose of his property during his life independently of the concurrence, and relieved from the claim of, his wife, provided the transaction is not merely colorable, and be unattended with circumstances indicative of fraud upon the rights of his wife.

2. SAME.

When the transaction by which the husband disposed of his property, real and personal, was colorable merely, and resorted to by him for the purpose of defeating his wife's right as heir, but with intent to reserve the benefit of the property to himself for life, it is a fraud upon the rights of his wife, from which she may be relieved after his death.

3. PRACTICE—CONSOLIDATION OF CAUSES.
Causes may be consolidated only when the different actions are between the same plaintiff and the same defendants.

*Appeal from the District Court of Arapahoe County.*

IN THIS one appeal are embraced three several actions, commenced in the district court by Jane H. Smith, as plaintiff, against Horace G. Smith, Jr., Ralph Smith and Jessie F. Smith, defendants respectively. In the court below the actions were consolidated and tried as one action. The complaints are alike in each of the three cases, except as to the party defendant.

It is alleged that appellee, Jane H. Smith, was married to Horace G. Smith in November, 1884, and that she remained his lawful wife until the 17th day of August, 1892, upon which last mentioned date he died at the age of seventy-five years. That at the time of the intermarriage of plaintiff and the deceased, he had three children living, the defendants in these several cases; that on the 28th day of August, 1888, the deceased being the owner of a large amount of real estate in the city of Denver to the value of forty thousand (40,000) dollars, free and clear from all liens and incumbrances of any kind and nature whatsoever, executed deeds to all of such real estate to the defendants in severalty.

Plaintiff alleges that these deeds, which bear date August 28, 1888, were made secretly without her knowledge, and without consideration, with the intent and design to defraud plaintiff in the event of her husband's death. It is further alleged that by these deeds the deceased conveyed to each of the defendants about a one third portion in value of all his real estate; that the deeds were acknowledged on the 28th day of August, 1888, but that none of them were filed for record until the 16th day of August, 1892, this being the day before the death of the grantor.

It is further alleged that at the time the deeds were filed for record, the said Horace G. Smith was in *extremis* and expected to die, and also that from the time of the execution

of these deeds until the same were recorded, they remained under the exclusive care and control of the grantor; that during all this time he retained the possession, dominion, and absolute control over all the property thus deeded, receiving all the rents, income and revenues therefrom the same as if the deeds had never been made, and in all respects exercised the exclusive rights of ownership over all the property.

It is further alleged that these deeds are testamentary in character and were made by the grantor, acting in collusion with the grantees, for the purpose of defrauding plaintiff of her right as heir of her husband.  It is further alleged that plaintiff was thereby left without means for her support, and that she was physically frail and in delicate health and unable to work for a living.

To these complaints a general demurrer was in each instance interposed and overruled.  Thereupon the defendants each answered separately.  The answers are the same in all the cases.

In their answers the defendants admitted that Horace G. Smith was the owner of the real estate described in the complaints, but denied that the real estate was of the value of the forty thousand (40,000) dollars, and allege that it was only of the value of fifteen thousand (15,000) dollars. They deny that on the 16th day of August, 1892, Horace G. Smith was pronounced to be in *extremis*, or that his death was then and there expected.  They deny that the deeds were in his possession, as alleged in the complaint, and allege that the deeds as soon as executed were delivered to the defendants respectively and retained by them.  It is denied that the grantor, after the execution of the deeds, retained possession or control over the property, and also that he received the rents, income or revenues therefrom.  After the answers were filed the causes were consolidated upon the motion of plaintiff, and against the objection of the defendants and each of them.

Upon these issues the cause was tried to the court without a jury.  Upon the evidence the court determined the

issues in favor of the plaintiff, and decreed that the defendants and each of them be compelled to convey to her the one half of all the real estate described in the complaint, and conveyed to the defendants respectively by the quitclaim deeds of August 28, 1888.   The defendants having excepted to the findings and decree, bring the case here by appeal.

Mr. DAVID MITCHELL and Mr. N. M. LAWS, for appellants.

Mr. V. D. MARKHAM and Messrs. BARTELS & BLOOD, for appellee.

CHIEF JUSTICE HAYT delivered the opinion of the court.

The record in this case discloses that the real estate deeded to his children, the issue by a former wife, was all the real estate owned by Horace G. Smith, Sr.; that aside from this he had no other property or choses in action, except a few hundred dollars in cash deposited to his credit in a bank, and that a few hours before his death he executed a check for this to one of his sons.   As a result of these transactions, he left his widow absolutely penniless at his death.   She was then old and infirm, and has since been dependent upon the charity of friends for her support.   Appellants contend that under the statutes of this state, the obligation of the husband to provide for his wife upon his decease is simply a moral obligation, and one that cannot *be enforced by the courts.*

Wherever the common law has prevailed, it has from the earliest times required the husband to support the wife so long as the marriage relation existed between them and she remained true to her marital vows.   Moreover, it imposes the duty upon the husband having property to provide for the support and comfort of his widow after his demise.

The obligation in this latter respect is to a large extent mutual, and the books are full of authorities to the effect that where either husband or wife attempts secretly to convey property on the eve of marriage, such conveyances would be

set aside for the benefit of the defrauded party. So, also, where the husband has attempted to convey real estate in fraud of his wife's right of dower, the courts have never been called upon in vain to protect such rights. Although in this state dower and the tenancy by courtesy are abolished, the statute provides that whenever either party shall die intestate possessed of real estate, if such intestate leave a husband or wife and children, * * * one-half of such estate shall descend to such surviving husband or wife. Sec. 1524, Mills' An. Stats. It is also provided that if any decedent leaves a widow, residing in this state, she shall be entitled to certain personal property, particularly describing the same, and that she may have the same set apart for her, not subject to the payment of his debts. Sec. 1534, Mills' An. Stats. It is further provided that when an inventory shall have been made of such personal estate, the widow may relinquish her rights to all property allowed to her, and that in lieu thereof she may claim the value of such property in money or other personal property, at her election. Sec. 1535, Mills' An. Stats. It is also provided: "In case any married man shall hereafter deprive his wife of over one-half his property, by will, it shall be optional with such married woman, after the death of her husband, to accept the condition of such will or one-half of his whole estate, both real and personal." Sec. 3011, Mills' An. Stats.

It is the obvious intent and purpose of the foregoing acts to provide the widow with the necessary means for her support in case of the death of the husband, whenever his property is sufficient for that purpose. Under these statutes appellee contends that where the husband during coverture secretly makes conveyance of all his property and keeps the knowledge thereof from his wife, thereafter retaining control and management of the same, that such conveyance should be treated and considered as testamentary in character and not as a deed, and in so far as the wife is deprived thereby of more than one half the real property, it should be held void as to her. To this proposition the zeal and ability of

counsel have been largely directed, and our attention has been called to numerous authorities upon either side of the controversy; some of them directly in point and others bearing more or less upon the question presented. Our examination of the cases cited, however, does not disclose one showing a parallel to the heartlessness and inhumanity manifested by the deceased. In many of the cases the husband has attempted to convey his personal property by a gift, to the exclusion of his widow, leaving for her reliance such interest as she might be entitled to in his real estate under the law. In other instances the husband has attempted to convey his real estate, leaving his personal property to be shared by his widow and other heirs, but this decedent has attempted to strip his widow, at his death, of all his property, both real and personal.

As to whether such a transaction should be upheld the authorities are not uniform, and to reconcile them would be impossible. In *Stewart v. Stewart*, 5 Conn. 316, the husband executed a deed conveying all his real estate to his children, placing the conveyance in the hands of a third person, to be delivered to them upon his death, on the happening of which event, two years after the execution of the deed, it was delivered pursuant to the trust, and the court held that the instrument was strictly a deed, and not a testamentary disposition; second, that it was not fraudulent in relation to the widow's right of dower. The case is the strongest we have found in favor of appellants' position. The action was, however, at law and not in equity, and the court in the course of the opinion mentions the fact that that may be a fraud in equity which is not at law.

The case of *Small v. Small* (Kansas), reported in 42 Pacific Rep. 323, is strongly relied upon by appellants. It is held in that case that, subject to certain limitations and against any claim of the widow made after death, a married man in Illinois or Kansas may, during coverture, give away to his children the bulk of his property, although the well known effect of the gift will be to deprive the widow of a

fair share of the property, which would otherwise have fallen to her.

In the course of the opinion the Kansas court quotes with approval the following language from the case of *Williams v. Williams*, 40 Fed. Rep. 521: " The main question is simply this: Can a married man give away his property, during coverture, for the purpose of preventing his wife from acquiring an interest therein after his death? The law seems to be that if such gift is *bona fide*, and accompanied by delivery, the widow cannot reach the property after the donor's death. * * * Neither the wife nor children have any tangible interest in the property of the husband or father during his life-time, except so far as he is liable for their support, and hence, he can sell it or give it away without let or hindrance from them. Of course, the sale or gift must be absolute and *bona fide*, and not colorable only. And if the sale or gift would bind the grantor it would bind his heirs."

The writer of the foregoing seems to have understood that a colorable sale could be set aside. Set aside by whom? If made for the purpose of defrauding an heir, it could only be set aside at the suit of the party defrauded, while the grantor, being a party to the fraud, would be refused relief by the courts. Hence it does not necessarily follow, as stated by him, that all sales or gifts which are binding upon the grantor are likewise binding upon his heirs.

As our statutes are borrowed from Illinois, decisions in that state are entitled to great weight. The case of *Padfield v. Padfield* was before the supreme court of Illinois three times,—68 Ill. 210; 72 Ill. 322; 78 Ill. 16. The conclusion of the court is, we think, fairly expressed in the following from Kerr on Fraud and Mistake, which is quoted with approval in the last opinion: " There can be no doubt of the power of a husband to dispose absolutely of his property during his life, independently of the concurrence, and exonerated from the claim of his wife, provided the transaction is not merely colorable, and be unattended with circumstances indicative of fraud upon the rights of the wife. If

the disposition of the husband be *bona fide*, and no right is reserved to him, though made to defeat the right of the wife, it will be good against her." Kerr on Fraud and Mistake, page 220.

Accepting this as a correct statement of the law, we think the case made by the pleadings and proofs before us brings the present case within the exception. For here, as we have shown, the transaction was merely colorable and made under circumstances strongly indicative of fraud upon the rights of the wife. The proof shows that these three several deeds were held from record for the period of four years after their execution. If one of these deeds had been withheld from record for that length of time, this would be a suspicious circumstance, while the fact that all were thus withheld leads very strongly to the conclusion that they were so withheld as a result of an understanding between the grantor and the three grantees, and that these grantees were guilty of collusion in the matter for the purpose of preventing information of the transfer from reaching the wife of the grantor, and to permit the grantor in the meantime to continue to exercise exclusive dominion and control over the property.

In the case of *Youngs v. Carter*, 17 N. Y. 194, the facts were that Daniel Youngs, a widower, was engaged to be married to the plaintiff in August, but in consequence of his sickness, the marriage was put off until September. In the interim he, without the knowledge of the plaintiff, conveyed nearly the whole of his real estate to two daughters by a former marriage and took back from them a lease for his life. The plaintiff did not learn of this conveyance until after marriage, and then immediately brought suit to have the same set aside. The court held that the conveyance was a fraud upon the inchoate right of the wife to dower, and adjudged her entitled to dower in the land so conveyed. In the course of the opinion, which is an instructive one, the court advances the following argument: "When the conveyance in controversy was executed, the relation of the grantor to the plaintiff was of a strictly confidential nature,

and a natural expectation inspired as well as implied by it was, that upon its consummation she should succeed to all the legal rights of a wife in the property owned by him. She acquired by means of it an equitable claim upon him to that extent. But, at the same time, it was not so entirely controlling as to prevent him from discharging such other equitable obligations as he might have previously incurred to his children. It simply restrained him from disposing of his property, fraudulently, for the purpose of preventing it from becoming subservient to the rights which the laws of the state secured to a wife."

This principle is announced and carried to its logical result in the case of *Manikee's Admr. v. Beard*, 85 Ky. 20, where the husband, in contemplation of death, gave to his children the whole of his personal estate, with the fraudulent intent to deprive his wife of the interest therein to which she would be entitled as his widow, and the court did not hesitate to set aside the gift at the suit of the widow. This case is a much stronger one in favor of the widow than that case, for the reason that there the gift was of personal property only, over which the owner has, by the commercial law, greater freedom than over his real estate, and her dower interest remained in the lands left by the husband at his demise, and this dower interest was sufficient to support her. Here, by the fraudulent conduct of the husband, the wife was stripped of all her rights as heir to his personal estate and to his real estate as well.

It is not necessary in this case, and it is not our intention to say anything that will prevent the husband, during his lifetime, from selling his personal property, or transferring his real estate for such consideration as he may be willing to accept, or without consideration, provided always that the transaction shall be absolute and *bona fide*, and not colorable merely, but what we do say is, where, as here, the complaint charges, and the evidence shows, that the transaction complained of is colorable only and resorted to by the husband for the purpose of defeating his wife's right as his heir, he

hoping thereby to obtain the full benefit of the property to the last hour of his life, and at the same time being able to deprive her of all interest therein as his heir, is as much of a fraud on the part of the husband as it is for a debtor, having in contemplation the incurring of an indebtedness, to put his property beyond his control, and the courts have universally declared the latter to be in violation of the statute of frauds. The same principle should govern in this case. The transaction is shown to have had its inception in a desire on the part of both the grantor and grantees to deprive the wife and stepmother of the benefits conferred upon her as an heir of her husband under our statutes, and the action of the district court in characterizing the transaction a fraud upon the rights of the wife as an heir is founded upon the plainest principles of justice and equity and must be sustained.

We have thus far considered the cause as made by the pleadings and evidence. We are satisfied, however, that a great injustice was done the defendants by the order of consolidation, made by the district court, as thereby they were prevented from fully presenting their defenses. The cases were consolidated upon the motion of the plaintiff and against the objection of the defendants and each of them, and, by reason of such consolidation, each defendant was deprived of the evidence of the defendants in the other suits, i. e., of the evidence of his codefendants after the consolidation. The ruling excluding these witnesses is based upon section 4816, Mills' An. Stats., which provides, among other things, " That no party to any civil action, suit or proceeding, or person directly interested in the event thereof, shall be allowed to testify therein, of his own motion, or in his own behalf, * * * when any adverse party sues or defends as the trustee or conservator of an idiot, * * * heir * * *, of any deceased person," etc.

The argument of appellee in support of the ruling of the court below proceeds upon the basis that after the consolidation there was but one suit, to which all the defendants were parties. If the suits were properly consolidated, the exclu-

sion of the witnesses must be upheld, but if the order of consolidation was not proper, the subsequent exclusion of the witnesses was also erroneous. The code provides, at section 20, that "Whenever two or more actions are pending at one time between the same parties, and in the same court, upon causes of action which might have been joined, the court may order the actions to be consolidated into one."

At least one of the essential conditions to consolidation under this provision was lacking in these suits, namely, they were not between the same parties. It is urged, however, by appellees that courts have the inherent right, independent of statute, to consolidate suits at law and actions in equity, where the interest of the parties and the public may be subserved by such consolidation. An examination of the authorities leads to the conclusion that, in the absence of legislation, the power of consolidation of actions has been exercised with the greatest freedom according to the will of the particular judge before whom the actions may have been pending, without any definite rule having been established for the guidance of the courts with reference thereto.

The provisions of our code with reference to consolidation are similar to those to be found in many of the other code states. See 4 Ency. Pleading & Practice, page 676. No case has been cited, and we know of none, where a consolidation has been permitted under such a statute unless all the prescribed conditions existed, and in a number of states the code provision has been referred to as controlling. In the case of *Mayor v. Coffin et al.*, 90 N. Y. 312, the court says: "The order of consolidation must be reversed because the special term had no power to make it. The authority to consolidate actions is given by sec. 817 of the code, and permits it only where both actions are pending between the same plaintiff and the same defendants for causes of action which might have been joined." See, also, *Kipp v. Delamater et al.*, 58 Howard's Prac. 183; *Blesch v. The C. & N. W. Ry. Co.*, 44 Wis. 593.

For error in ordering the consolidation and in depriving

each of the defendants of the evidence of the others, the judgment must be reversed and the cause remanded.

*Reversed.*

MR. JUSTICE CAMPBELL (concurring specially).

Upon the ground that the order of consolidation was erroneous, I concur in the judgment of reversal. From that portion of the opinion in which the chief justice holds the conveyance by the husband to be a fraud upon the property rights of the wife, I dissent. While joining with my associates in characterizing the husband's conduct from a moral standpoint as most reprehensible, I am not, as at present advised, prepared to say that the law of this state does not permit him to do what the evidence in the case shows that he has done. My reading of the authorities is that the rule announced in the majority opinion should prevail where tenancy by the courtesy and dower exist; but the application of the principle to the case at bar, where, as in our state, dower and tenancy by the courtesy have been abolished, does not seem to me to be warranted.