[No. 4368.]

### PHILLIPS ET AL. v. PHILLIPS.

**1.  Fraudulent Conveyances—Husband and Wife.**

A husband executed deeds to his property to his daughters and placed them in envelopes, with letters addressed to the daughters containing directions concerning the property, which he retained in his possession for several years. A few months before his death he withdrew the deeds from the envelopes and delivered them to the daughters and they were placed on record. He retained general supervision of the property until his death, and after delivering the deeds collected part of the rents and paid part of the taxes. There was no evidence that he delivered the deeds because he anticipated death in the near future, nor that his health was so impaired as to justify a finding that he believed his death was imminent. There was no evidence of any collusion or agreement between him and his daughters to defraud his wife. Held that although the deeds when executed were testamentary in character, when he delivered them their character was changed and there being no fraud or collusion shown, the deeds were valid conveyances to the children and could not be set aside as in fraud of the rights of the wife.

*Appeal from the District Court of Arapahoe County.*

Messrs. TALBOT, DENISON & WADLEY, for appellants.

Mr. N. Q. TANQUARY, Mr. C. F. MILLER and Mr. LUCIUS W. HOYT, for appellee.

Mr. JUSTICE STEELE delivered the opinion of the court.

Actions were commenced by Alice V. Phillips against Julia M. Phillips, Mattie C. Oswald and Grace J. Anderson, respectively, to set aside certain deeds executed by Sidney Phillips in his lifetime, upon the ground that the said deeds were executed for the purpose of defrauding her, Alice V. Phillips, of her right as widow to a distributive share of said property. The causes were consolidated, and from judgments rendered in favor of the plaintiff the defendants have appealed to this court.

It was shown upon the trial that several years prior to his death Sidney Phillips executed and acknowledged certain warranty deeds and put them, with letters in envelopes addressed to the appellants, who are his daughters, in a tin box in the cellar of his residence. Later, and in the month of November, 1899, the said deeds were delivered to the grantees therein named, and were duly recorded in the office of the recorder of Arapahoe county. It was admitted that in the years 1898 and 1899 Sidney Phillips filed a schedule of property with the county assessor of Arapahoe county, wherein the property described in the deeds mentioned was returned for taxation as his property. And in the decree this finding appears: "The intention of Sidney Phillips was to treat everyone alike in the disposition of his property, but in 1888 he made three deeds to his three daughters, defendants in the consolidated causes, and buried the same in the cellar, where they remained several years; that plaintiff discovered these deeds, but said nothing to her husband touching them, and that she knew of the existence of these deeds for years; but the court

finds this makes no difference, and that it does not change the character of the husband's act; the court finds that when the said Sidney Phillips made these deeds to his daughters he intended they should be testamentary in character and not to be effective until his death; that he changed his mind but did not change the letters to the daughters; that the daughters put the deeds on record and paid the recording thereof and then took them away, and that the daughters turned the deeds back to Sidney Phillips who kept them a month and returned them again to the daughters, but the court finds that he collected the rents and paid the taxes and paid the insurance and treated the property in all respects thereafter as though it were his own property; and that these deeds were testamentary in character and nature; and that Mr. Sidney Phillips could not deed away this property in contemplation of defeating his wife out of what she would have under the law of descent in this state.''

The finding of facts is clearly supported by the evidence, except, perhaps, that portion thereof which finds that Sidney Phillips collected the rents and paid the taxes and paid the insurance and treated the property in all respects thereafter as though it were his own property. Sidney Phillips died July 1, 1900. While the testimony shows that Mr. Phillips kept and retained general supervision of the property after the deeds were delivered to his daughters, it was shown that one of the daughters paid her wages to her father and contributed toward the payment of taxes; that another daughter collected and retained some of the rents; that the daughters authorized their father to collect the rents. Mrs. Oswald testified that after her father came to her house to live, shortly before his death, she collected the rents from the property conveyed to her and used the money for her support and that of her father. It is shown by the tes-

timony that at the time of Sidney Phillips' death he was about sixty-seven years of age.

The plaintiff relies chiefly upon the case of *Smith v. Smith,* 22 Colo., 480, and 24 Colo., 527, to sustain the judgment. While the facts in the case mentioned are somewhat analogous, they are so different in essential particulars that we feel that the decision of that case is not decisive of this. There was no proof of the delivery of the deeds in the Smith case until the day before the grantor died, and the court found that the deeds were withheld from record for the purpose of preventing the wife of Smith from learning of the facts; that there was a collusive agreement between the father and the children, and that the property was conveyed, with the connivance of the children, for the purpose of defrauding Mrs. Smith. It was further found by the court that all the allegations of the complaint were true as alleged, and it was alleged in the complaint that "From the time of the execution of these deeds until they were recorded, they remained under the exclusive care and control of the grantor." It also appeared that at the time of the recording of the deeds Smith was expected to die, and that he not only conveyed all his real estate to his children but that he drew from the bank, a few hours before his death, the little money he had and gave it to one of his sons, and that he left his wife penniless. The court held the deeds invalid and fraudulent. In the course of the opinion, the following is quoted with approval: "There can be no doubt of the power of a husband to dispose absolutely of his property during his life, independently of the concurrence, and exonerated from the claim of his wife, provided the transaction is not merely colorable, and be unattended with circumstances indicative of fraud upon the rights of the wife. If the disposition of the husband be *bona fide,* and no right is reserved

to him, though made to defeat the right of the wife, it will be good against her.''—Kerr on Fraud and Mistake, page 220.

The authorities generally hold that colorable conveyances made for the purpose of defeating the wife's right are not valid; that conveyances made in immediate expectation of death to accomplish the purposes of a will are testamentary in character and do not defeat the right of the wife; that conveyances made in contemplation of marriage, without the knowledge of the intended wife, for the purpose of defeating the right of dower, are regarded as fraudulent.

In the Smith case, as we read it, it is decided that a husband may dispose of his property for the purpose of defeating the right of the wife, and unless the transaction is colorable merely, or is attended with circumstances indicating fraud, it will be good as against the wife; and the fact that the husband intended to defeat her right is not in itself sufficient to invalidate the conveyance—there must be participation in fraudulent conduct by the grantee.

The deeds we have before us are not testamentary in character. The title passed from grantor to grantee when the deeds were recorded. There is no reservation in them postponing the vesting of title until the death of the grantor; there is no power of revocation; and, as far as the deeds are concerned, there is nothing shown to indicate an intention on the part of the grantor to have them operate as a will. Nor does the time of their delivery indicate an intention to have them accomplish the purposes of a will. They were delivered seven months, and more, before Mr. Phillips' death, at a time when he was about and able to transact business. There is nothing to show that his health was impaired to such an extent as to warrant a finding that he believed his death to be imminent, or that he delivered the deeds because of his an-

ticipation of death in the very near future. The only testimony shown in the abstract to indicate that he was not in ordinary health for one of his age is the statement of Mrs. Phillips that, "His health has been poorly—having suffered a good deal with pain in his head;" that "Mr. Phillips was sick a good deal and away a good deal," and that he was not strong enough to earn money.

The conclusion of the court that the deeds were testamentary in character appears to have been based upon the fact that letters addressed to the daughters were found in a tin box, with other valuable papers, after the decease of Mr. Phillips. The court uses this language: "The court finds that when the said Sidney Phillips made these deeds to his daughters he intended they should be testamentary in character and not be effective until his death; that he changed his mind but did not change the letters to the daughters."

The deeds were inclosed with letters in envelopes addressed to the daughters, and placed in a tin box. The letters contained directions to the daughters concerning the property conveyed. The deeds were subsequently withdrawn and delivered to the daughters. In thus severing the deeds from the letters, and delivering the deeds, their character was completely changed. As long as they remained with the letters and under the control of Mr. Phillips, his intention, undoubtedly, was to have the deeds become effective only upon his death; but when he delivered them, his intention was to have them take effect at once.

The deeds, not being testamentary in character, are valid deeds of conveyance of the property described therein, unless the testimony disclosed a fraudulent agreement between the parties. The testimony wholly fails to establish a fraudulent agreement. It is said that the fact that the daughters al-

lowed the father to retain the general supervision of the property, collect the rents, pay the taxes, etc., is evidence of such fraudulent agreement. Mr. Phillips did not collect all the rents and did not pay all the taxes. The daughters collected a part of the rent, and gave receipts in their own names. When a grantor is permitted by his grantee to retain the possession of real estate and collect and retain the rents, the transaction presents some suspicious features; but when the transaction is between parent and child, the suspicious circumstances may be explained. It was perfectly natural for the daughters to authorize their father to take the general supervision of this property, and it was natural for him, as their father, to care for the property and to desire to have over it a general supervision; and we cannot assent to the assertion of counsel that there was a fraudulent or collusive compact between the father and his daughters.

No fraud or collusion between the father and his children having been established, and the deeds in question not being testamentary in character, the judgment of the district court must be reversed.

*Reversed.*