### No. 12,715.

HAMMOND ET AL. *v.* HAMMOND, ADMINISTRATRIX ET AL.
(14 P. [2d] 1076)

Decided September 19, 1932.

Messrs. MOYNIHAN, HUGHES & KNOUS, for plaintiffs in error.

Mr. V. G. Seavy, Mr. L. E. Langdon, Mr. C. C. Hearns-berger, for defendants in error.

*In Department.*

Mr. Justice Moore delivered the opinion of the court.

Effie Hammond, as sole heir at law of her husband, George Hammond, and as administratrix of his estate, sued defendants in the district court of Otero county to set aside two deeds executed by George Hammond, dated January 26, 1924, purporting to convey certain real property in Otero county to defendants, Henry Hammond, Elijah Hammond, John Hammond, Mrs. Mary Radcliff and Bertha Gallagher Latson, and to quiet title to said property. Bertha Gallagher Latson was the daughter of plaintiff and stepdaughter of George Hammond, the other named grantees were his brothers and sisters. The trial court, finding there had been no delivery of said deeds to the grantees, set them aside and quieted title in the plaintiff. To reverse this judgment, defendants now prosecute this writ.

The record discloses that E. R. Boggs, a notary public, at the request of George Hammond, on January 26, 1924, prepared the deeds in question. Hammond signed, acknowledged and gave the deeds to Boggs. In this connection, Boggs testified: Mr. Hammond told me, "Those deeds are to be left in your care, you record them if you see fit. If you think it the best to record them before my death, all right; if you think it better to wait until after I am gone, then record them as soon as possible after I am gone." I told him I didn't think it would be advisable to record them until after his death. He further stated that he left Rocky Ford in March, 1928, taking the deeds with him, intending to keep them until Hammond's death. Upon learning of Hammond's death, he stated: "I immediately sent them [the deeds] to Carl Wilson to have them recorded."

There appears in evidence a letter dated June 23, 1928, written by Boggs to E. E. Pierson, who had written to him concerning the Hammond estate, wherein Boggs wrote: "If I remember right Mr. Hammond made those deeds over four years ago after he said he had consulted an attorney and I acknowledged them for him as Notary Public and he gave them to me to be recorded at his death which I did."

Hammond died April 5, 1928. After the making of these deeds and until his death, he treated the property as his own, listed it as his property in tax schedules, paid taxes thereon, collected and used rentals from one piece of property and resided upon the other and, for the purpose of maintaining credit with the Colorado Savings and Trust Company of La Junta and in order to secure loans thereon, furnished to the bank a financial statement in which he listed all the property here involved as his own. On January 10, 1927, Hammond executed a lease of two rooms in the building on a portion of the property to the Mountain States Telephone and Telegraph Company for a period of three years, with an option to renew for one, two or three years more, and stated to a real estate agent that he would sell the property if he could get his price.

On February 21, 1928, Hammond signed a writing wherein he stated: "My Property consists of  *  *  * an interest in some dry lands south of Rocky Ford, Colo., and property located in the city of Rocky Ford, Colorado. [The last named being the property here involved.] Mr. E. R. Boggs knows my wishes of how I would like to have all my estate managed and kept for the benefit of my wife Effie Hammond during her natural life. I am doing this in order that there be no misunderstanding about how my estate shall be looked after when I am gone from this earth."

The foregoing conclusively demonstrates that George Hammond did not intend that the title to said property pass to the grantees in the deeds at the time of their exe-

cution. At all times thereafter he treated the property as belonging to him and could have at any time withdrawn the deeds from the possession of Boggs, his agent. Depositing the deeds with Boggs, subject to such withdrawal, does not constitute a delivery thereof to the grantees named therein.

In *Taylor v. Taylor,* 79 Colo. 487, 489, 247 Pac. 174, a similar situation was under consideration wherein it was held: ''The conclusion is justified that the delivery was a pretense and that the real purpose was to keep such control that he could destroy the deeds or let them take effect only at his death, which at his age and health was not very far off. The deeds were dated May, 1919, and July, 1920, respectively. He died April 11, 1922. The rule in this state is that deeds so given are lawfully delivered if with intent to really and actually take effect, but not if they are merely colorable, that is, a mere pretense or intended to take effect only at death [citing cases]. The court was justified in the conclusion that there was no delivery.''

To the same effect are *Smith v. Smith,* 22 Colo. 480, 46 Pac. 128; *Phillips v. Phillips,* 30 Colo. 516, 71 Pac. 363; *Ellis v. Jones,* 73 Colo. 516, 216 Pac. 257; *Grover v. Clover,* 69 Colo. 72, 169 Pac. 578.

There having been no valid delivery proven, the assignments of error concerning the rejection of testimony offered to prove acceptance by the grantees are immaterial and merit no discussion.

Judgment affirmed.

MR. CHIEF JUSTICE ADAMS and MR. JUSTICE BUTLER concur.