## No. 17,008.

THUET ET AL. *v.* THUET ET AL.

(260 P. [2d] 604)

Decided July 20, 1953. Rehearing denied August 10, 1953.

Mr. ROBERT G. FLEMING, Mr. ROBERT B. MOCH, for plaintiffs in error.

Mr. ANTHONY F. ZARLENGO, Mr. FRED M. WINNER, for defendants in error.

*En Banc.*

MR. CHIEF JUSTICE STONE delivered the opinion of the court.

HEREIN Alphons Thuet, joined by his son and an adopted child of a deceased daughter, challenged the validity of a deed from his wife, delivered after her death, to a surviving daughter.

Plaintiff Alphons Thuet and his wife Lena were married in 1892, and the latter died January 19, 1951. In 1902 Lena acquired title to a parcel of land of about fifty acres, in part at least as a gift to her from a member of her family. They built a residence and other improvements on the property through the years and it has been the family residence ever since. For long Alphons was a wage employee at a brewery, and Lena and the children operated the farm and acquired a herd of milk cows. His wages and the meager farm earnings were intermingled and used for improving the premises and supporting the family. Apparently business matters were handled almost exclusively by Lena, with the assistance later of her daughter Marie, who has continued at all times to live in the family home and has been active both at household and farm work.

Alphons Junior left the farm at the age of twenty-three, nearly thirty years before the bringing of this suit. For many years he had contributed nothing to the parents. The other daughter died about 1930, leaving the adopted daughter, Barbara, and a natural daughter, Gaynell, who refused to join as plaintiff and consequently was made defendant. Prior to their mother's

death, these two girls were taken into the home of the grandparents and were maintained and grew up there under their care and that of their Aunt Marie.

In 1941, when Alphons was seventy-three, he retired and has not since been gainfully employed. Upon his retirement, Marie sought outside employment, which she has since continued, and always has contributed her earnings toward the maintenance of the home, where at the time of the trial the father still resided with her. Barbara, after living there approximately twenty years, moved away about three years before her grandmother's death and is married.

June 1, 1942, Lena executed a deed, conveying the property to Marie, and forthwith delivered it to the First National Bank in Golden, accompanied by the following letter of instruction:

"Golden, Colorado
June 1, 1942

"To the First National
Bank, Golden, Colorado.
Gentlemen:

Herewith I deliver to you, without power of recall by me, the accompanying Warranty Deed, which I have this day duly signed, acknowledged and executed, and by which I am conveying to my daughter, Marie A. Thuet, all of the land and water rights that were heretofore conveyed to me by Warranty Deed, from Grant Churches and Sophia Claus Churches, dated February 14th, 1929, and recorded February 18th, 1929, at page 347 in Book 296 of the records in the office of the County Clerk and Recorder less those portions thereof heretofore sold and conveyed by me, of the County of Jefferson, and State of Colorado. Said land and water rights, which are situated in said Jefferson County, are fully described in my said deed to said Marie A. Thuet.

This deed is to take effect In Presenti, and you will retain it in your sole custody and not record it nor deliver it to the said Marie A. Thuet, nor to anyone for

her, until after my death; immediately upon my death you are to deliver it to the said Marie A. Thuet. During my lifetime I am to have the privilege of occupancy of said property.

Dated at Golden, Colorado, this 1st day of June, 1942.

Lena Thuet"

Neither Alphons nor Marie knew of the existence of the deed until a few hours before Lena's death when she instructed Marie to get the deed at the bank and record it.

In the complaint, plaintiffs alleged that the deed was executed without the knowledge of Alphons and without consideration and with intent and design to defraud him of his rights to inherit as surviving husband; that the property remained under the exclusive care and control of Lena; that she executed leases thereon; applied as owner for readjustment of zoning, and in all respects exercised exclusive rights of ownership.

Following the old form of code pleading, plaintiffs alleged in another "cause of action," that the deed to Marie "was merely an attempted colorable transfer of the property, and testamentary in character, and was executed for the purpose of defrauding the heirs at law of the grantor and for the further purpose of circumventing the provisions" of the statutes dealing with the execution of wills. After answer denying the essential allegations of the complaint, there was trial to the court which thereafter found in favor of defendants and gave judgment dismissing the action.

■ ■ In Colorado, the owner of property has the right to convey the same without the consent or knowledge of the spouse or other heir. The mere fact that such conveyance will deprive a surviving spouse of right to inherit an interest in the property does not make it fraudulent or invalid. *Ellis v. Jones,* 73 Colo. 516, 216 Pac. 257. Such deed may be manually delivered to a third person with instruction to deliver to the grantee upon the grantor's death. *Bury v. Young,* 98 Cal. 446,

33 Pac. 338; *Standiford v. Standiford,* 97 Mo. 231, 10 S.W. 836; Anno. 52 A.L.R. 1222, et seq. "Such a delivery [to a third person] is effectual to convey title to the grantee upon the grantor's death, although the grantee is not aware of the delivery until after the grantor's death." 16 Am. Jur., p. 518, §143. "It is not essential to a valid delivery [to a third person] that the grantee knew of the existence of the deed before the grantor's death." 26 C.J.S., p. 250, §46. See, also, *Brandt v. Brandt,* 85 Cal. App. 720, 260 Pac. 342, and *Neely v. Buster,* 50 Cal. App. 695, 195 Pac. 736.

In such conveyance there may be reservation of life estate to grantor evidenced by such reservation in the deed itself or by instruction for it to be held by the third person to whom it is delivered until the time of the death of the grantor, provided it was the intent of the grantor at the time of its delivery to pass a present interest in the property with mere postponement of possession or enjoyment. Anno. 76 A.L.R. 636.

However, it is essential to the validity of such a deed that there be bona fide intent on the part of the grantor that the delivery to the third person be without right of revocation or recall by him. Otherwise, the deed could not convey a present interest since it might subsequently be recalled, and it could become certain and effective only upon the death of grantor terminating his right of recall. In such case, the delivery would be a mere pretense by which in fact the grantor retained the ownership and power of disposition of the property during his lifetime and sought by means of the deed to give the property to the grantee only upon his death. Hence such purported conveyance would be colorable only and the transfer not real, but illusory. Anno. 76 A.L.R. 636; *Smith v. Northern Trust Co.,* 322 Ill. App. 168, 54 N.E. (2d) 75.

In the instant case, there is no contention that the execution of the deed was not the intended act of the

grantor. Upon its proper execution and acknowledgment and delivery to the bank, the grantor specifically declared in her instruction to the bank that the deed was to take effect *in presenti,* and that it was delivered to the bank "without power of recall by me." Upon its face, such instruction obligated the bank on its acceptance of the deed to hold it in behalf of the grantee; the grantor had no right subsequently to withdraw it, and no subsequent failure to pay bank charges or other act or change of intention by the grantor could divest grantee of her interest therein. *Johnson v. Cooper,* 123 Kan. 487, 255 Pac. 1112; *Gappmayer v. Wilkenson,* 53 Utah 236, 177 Pac. 763.

The only issue to be determined, therefore, was whether at the time of delivery of the deed such declared intent of the grantor was her true intent, or whether it was merely a scheme by which to make disposition of the property after her death contrary to the provisions of our statute concerning wills. That issue was an issue of fact which was determined by the trial court upon supporting evidence. Its finding is in accordance with the specific declarations of grantor as to her intent, which must be considered as prima facie true. Such intent, as would appear from the circumstances, was equitable and its wisdom is indicated by the fact that at the time of the trial grantor's husband was still being cared for by the grantee in his old age and mental confusion, notwithstanding the suit he had brought against her. The acts of the grantor, who resided with and was assisted by the grantee in continued occupancy of the premises and in executing leases, were not inconsistent with her reserved life estate therein. It is not delivery of possession of the property, but irrevocable delivery of possession of the deed which is the primary consideration. The execution thereafter of leases for the removal of gravel was prima facie inconsistent with good faith conveyance of the remainder, but, as noted by the

trial court, such leases were signed shortly before grantor's death, in her illness, and their execution would not be sufficient as a matter of law to overcome the other evidence of intent to make valid delivery of the deed and the finding of delivery by the trial court.

Counsel for plaintiff in error in their able presentation, rely strongly on the case of *Barnes v. Spangler,* 93 Colo. 254, 25 P. (2d) 732. In that case, the letter of instruction under which the deed was given to the bank for holding said, "I hand you herewith Warranty Deed * * * which I shall ask you to accept for safekeeping and delivery to Miss Vera M. Spangler in the event of my death." Apparently the court determined that under such letter the bank was to accept the deed "for safekeeping" in behalf of grantor; that delivery was to be made to the grantee only "in the event of my death" while it was still held for such safekeeping, and that grantor had the right to recall the deed in the meantime. In the instant case, on the contrary, there is positive declaration of intent to deliver without power of recall and to convey a present interest in the property.

Counsel also rely on *Smith v. Smith,* 22 Colo. 480, 46 Pac. 128. In that case it was alleged in the complaint that the deeds remained in the control of the grantor until the day before his death when he was *in extremis,* and that he at all times exercised exclusive rights of ownership, and the trial court found the issues in favor of plaintiff, the widow of grantor. This court in its opinion in that case quoted with approval a quotation in *Padfield v. Padfield,* 78 Ill. 16, from Bump's note in Kerr on Fraud and Mistake, page 220, as follows: "There can be no doubt of the power of a husband to dispose absolutely of his property during his life, independently of the concurrence, and exonerated from the claim of his wife, provided the transaction is not merely colorable, and be unattended with circumstances indicative of fraud upon the rights of the wife. If the disposition of the husband be bona fide, and no right is

reserved to him, though made to defeat the right of the wife, it will be good against her."

Accordingly, the judgment is affirmed.