No. 17,149.

BOSTRON *v.* BOSTRON ET AL.
(265 P. [2d] 230)

Decided December 21, 1953.

Mr. DAVID J. MILLER, Mr. MELVIN DINNER, for plaintiff in error.

Mr. MAURICE W. KONKEL, for defendants in error.

*En Banc.*

Mr. JUSTICE KNAUSS delivered the opinion of the court.

WE will refer to the parties as they appeared in the trial court, where plaintiff in error was plaintiff, and defendants in error were defendants, or by name.

In July, 1951 plaintiff commenced an action for divorce against her husband, Conrad Bostron, alleging extreme and repeated acts of cruelty as the basis thereof. Later that month she filed an amended complaint, joining as defendants in the action John Bostron, Katherine Krieger, Anna Schaeffer and Lena Givens, all children of Conrad Bostron, together with Luther F. Givens, husband of Lena Givens. Pursuing the old form of code pleading, plaintiff alleged in addition to her claim for divorce, two additional "Causes of action."

In her second "cause of action" plaintiff alleged that prior to February 3, 1947 her husband was the owner of certain farm property; that on February 3, 1947 Conrad Bostron conveyed this property to John Bostron, Katherine Krieger, Anna Schaeffer and Lena Givens without consideration, and in fraud of the rights of the plaintiff as his wife; that about March 1, 1942 her husband transferred to Luther F. Givens and Lena Givens all of his farm equipment and a portion of his household furniture, and that in exchange for said transfer plaintiff alleged

that Luther F. Givens and Lena Givens were to hold title to a certain house in Sterling, Colorado, for the use and benefit of Conrad Bostron; that thereafter, pursuant to a joint plan, and in fraud of plaintiff, defendants Luther F. Givens and Lena Givens conveyed the Sterling real estate to the defendants Katherine Krieger, Anna Schaeffer and Lena Givens by deed dated February 4, 1947, and that on January 1, 1940 Conrad Bostron conveyed to the defendant John Bostron, his son, an unimproved tract of land near Atwood, Colorado without consideration and in fraud of the rights of plaintiff.

In her third "cause of action" plaintiff reiterates the alleged fraud set forth in the second "cause of action," and further alleged that the defendants stood in a confidential relation to the plaintiff's husband; that said conveyances were made with intent and plan to defraud the plaintiff of any right, claims, or demands she might acquire by virtue of being the wife of Conrad Bostron; that upon the entry of a decree of divorce in her favor plaintiff would be without an adequate remedy at law to enforce alimony or a property settlement, and that the conveyances aforesaid were made with intent to hinder, delay and defraud plaintiff in her lawful suit for divorce and property settlement.

Plaintiff prayed for a divorce and a decree that all transfers, assignments and conveyances executed by her husband to defendants be declared null and void, and that the court award plaintiff a property settlement on the basis that the husband was the equitable owner of the real estate.

After answer by all defendants, denying the essential allegations of the complaint, there was a trial to jury on the divorce issue, which resulted in a directed verdict in favor of Conrad Bostron. The action later proceeded to trial to the court on the additional claims made by plaintiff. These additional issues were by the trial judge resolved in favor of defendants, and judgment dismissing the action was entered. From this judgment on the addi-

tional issues, plaintiff brings the cause here by writ of error.

The trial judge entered detailed findings of fact and conclusions of law and concluded that the conveyances were bona fide, absolute and not colorful, and were not made with fraudulent intent. These controverted issues were determined by the trial court upon supporting evidence.

It is apparent that the third "cause of action" had to do with the divorce and plaintiff's claim for a property settlement and alimony in the event she was successful in her suit for dissolution of the marriage. In this divorce action she was unsuccessful, hence we need not further consider the so-called third "cause of action."

The evidence discloses that in 1937 Mr. and Mrs. Bostron had reached that point in life where they apparently felt they could not continue to successfully farm the property. It was then that Mrs. Givens and her husband agreed to move on the farm and take care of it. They permitted Mr. and Mrs. Bostron to live in their home in Sterling, Colorado. Some ten years later the deed was executed whereby Bostron conveyed the farm to his four children. He told his wife what he was going to do, and he did it. Everyone concerned knew what had taken place.

The trial judge in commenting on this transaction, said: "The Court is unable to see fraud in the assistance given by the children to this elderly couple by way of suitable living conditions in the city, and the watchful and friendly care and interest of defendant Bostron's adult children."

It is admitted that both Conrad Bostron and his wife are over eighty years of age. It is also without dispute that when they moved into the Givens house it was with the understanding that they would not be obligated to pay rent therefor, and that for their support Givens would turn over to Conrad a comparable landlord's share from the farm for their support. In addition, Conrad and

his wife worked in Sterling to augment their income. It is definitely disclosed by the record that under this arrangement plaintiff and her husband always had "sufficient for them to get along." Until a comparatively short time before the instant action was instituted all parties thereto got along amicably. Plaintiff was fully aware that the deed to the farm had been executed and recorded, and that neither she nor her husband were to pay rent for the Sterling house so long as either of them lived, and that the Bostron children would see to it that the aged couple were adequately taken care of, either out of the income from the farm, or otherwise.

The findings of fact entered by the trial court are amply supported by the evidence. Here the deed was executed in 1947 and immediately recorded. The fact of its execution and delivery was known to plaintiff.

In *Phillips v. Phillips,* 30 Colo. 516, 71 Pac. 363, the deeds sought to be set aside by the widow after her husband's death were withheld for record for some ten years after their execution. The following language from *Smith v. Smith,* 22 Colo. 480, is quoted with approval in *Phillips v. Phillips, supra:* "There can be no doubt of the power of a husband to dispose absolutely of his property during his life, independently of the concurrence, and exonerated from the claim of his wife, provided the transaction is not merely colorable, and be unattended with circumstances indicative of fraud upon the rights of the wife. If the disposition of the husband be *bona fide,* and no right is reserved to him, though made to defeat the right of the wife, it will be good against her." —Kerr on Fraud and Mistake, page 220."

Again quoting from *Phillips v. Phillips, supra,* at page 520: "The deeds we have before us are not testamentary in character. The title passed from grantor to grantee when the deeds were recorded. There is no reservation in them postponing the vesting of title until the death of the grantor; there is no power of revocation; and, as far as the deeds are concerned, there is nothing shown to

540

indicate an intention on the part of the grantor to have them operate as a will. Nor does the time of their delivery indicate an intention to have them accomplish the purposes of a will. They were delivered seven months, and more, before Mr. Phillips' death, at a time when he was about and able to transact business. There is nothing to show that his health was impaired to such an extent as to warrant a finding that he believed his death to be imminent, or that he delivered the deeds because of his anticipation of death in the very near future."

There is nothing in this record to indicate that Conrad Bostron made this deed in contemplation of death. In fact, he is still living.

■ We may well apply the following language found in *Phillips v. Phillips, supra,* to the instant case, page 521: "The deeds, not being testamentary in character, are valid deeds of conveyance of the property described therein, unless the testimony disclosed a fraudulent agreement between the parties. The testimony wholly fails to establish a fraudulent agreement."

■ Our recent pronouncement in *Thuet v. Thuet,* 128 Colo. 54, 260 P. (2d) 604, is in point on many phases of this controversy. In the Thuet case, we said: "In Colorado, the owner of property has the right to convey the same without the consent or knowledge of the spouse or other heir. The mere fact that such conveyance will deprive a surviving spouse of right to inherit an interest in the property does not make it fraudulent or invalid. *Ellis v. Jones,* 73 Colo. 516, 216 Pac. 257."

Our decisions in *Phillips v. Phillips, supra,* and *Thuet v. Thuet, supra,* are in harmony with the great weight of authority, and in view of all the facts as determined by the learned trial judge, and the authorities applicable thereto, we must affirm the judgment.

The judgment is affirmed.