No. 17,325.

MOEDY v. MOEDY.
(276 P. [2d] 563)

Decided November 15, 1954.   Rehearing denied December 6, 1954.

Mr. THOMAS J. WARREN, Mr. RONALD H. STRAHLE, MABEL B. KENNEY, for plaintiff in error.

Mr. HAROLD E. HAFER, Mr. PAUL E. WENKE, for defendant in error.

*En Banc.*

MR. JUSTICE CLARK delivered the opinion of the Court.

PLAINTIFF in error was the unsuccessful plaintiff in the trial court. Her action was commenced against her husband, Otto J. Moedy, as a divorce proceeding in which she joined the defendant, George O. Moedy, in order that property previously conveyed by Otto to George might be subjected to her claims for support and maintenance. Otto, having died prior to the action being reached for trial, proceedings were abated as to him, and the complaint amended as to George so as to direct the action against the conveyance from Otto to George, who is Otto's son. Trial was had to the court without a jury. After plaintiff's counsel had rested, following the introduction of all the evidence on plaintiff's side of the case, counsel for defendant moved for a judgment of dismissal. The trial court thereupon made rather complete findings

and stated his conclusions of law, determining the case actually upon the facts, but entering a judgment of dismissal as requested by counsel for defendant in their motion therefor.

The facts, reflected in the light most favorable to plaintiff, are substantially as follows: Plaintiff and Otto J. Moedy were married September 17, 1946, and thereafter made their home near La Porte, Colorado, something like eight or nine miles from Fort Collins, where Otto owned a tract of seven and one-half acres of land with a residence thereon, and which had been his home prior to this marriage. The property is stated to have a valuation of approximately $10,000 and is the subject matter of this action.

Otto, at the time of his marriage, was sixty-six years of age and had two married children, George and Cordelia. Plaintiff had one adult son, William Porter, who, following the marriage of his mother and Otto, made his home with them the greater portion of time.

Otto, although afflicted with asthma, was able to be about, drive his automobile, take care of all business matters needing attention, was a frequent attendant at public sales for which he had a penchant, and tinkered in his workshop at home. This situation appears to have prevailed until late in the year 1951 or early in 1952 when the condition of Otto's health materially worsened and late in January, 1952, his wife caused him to be taken to the Larimer County Hospital. In a comparatively short time Otto was released from the hospital and returned to his home; later was hospitalized a second time; then brought to Denver to the Colorado General Hospital, where he was twice a patient, and died June 11, 1952.

November 4, 1949, Otto went to Fort Collins, called at the establishment where his son was employed, and arranged for George to get time off to go with him to consult an attorney. George took him to a Mr. Shannon, and, according to his statement, not disputed in the rec-

ord, left his father in Mr. Shannon's office without having known the purpose of the visit. January 6, 1950, there was recorded in the office of the county clerk and recorder of Larimer county a conveyance of the seven and one-half acre tract above mentioned to Otto J. and George O. Moedy in joint tenancy, the deed bearing date November 4, 1949. After being recorded, it was returned to Mr. Shannon.

By this action, the instrument is sought to be declared void. It will be noted that it is dated two and one-half years prior to Otto's death and more than two years prior to the commencement of his final illness. Plaintiff was not consulted concerning the execution of said deed, and testified that she had no knowledge thereof. This probably is a fact as of the time of the execution of the deed, but plaintiff admitted that later, she learned that some sort of conveyance had been made because the tax notices came in the joint names of Otto and George. She also testified that she endeavored to talk to Otto about this situation, but that he either put her off by telling her that she would be taken care of or to mind her own business.

There is some evidence in the record to the effect that Otto was a rather stern, self-willed sort of man, and it is said that George is arrogant and bossy. It is contended that George and his wife always resented the marriage of plaintiff to Otto, and that they undertook to undermine her position as his wife. After a careful search of this entire record, there is nothing of any material importance indicating that George had any improper influence over his father or that he ever undertook to dictate to him in any respect. The nearest to this is the testimony of plaintiff that frequently when George and his wife came to the home of plaintiff and Otto, George's wife would stay in the house and quarrel with the plaintiff while George would go out to the workshop and talk to his father. That George is arrogant and dictatorial seems to be based primarily on the fact that when he

learned for the first time that his father was in the hospital, he upbraided the plaintiff and her friend for not letting him know, and then again after the father's return from the hospital to his home, there seems to have been some family altercation about his father's care. The evidence is not clear on this point, but immediately following the episode, whatever the extent of it might have been, plaintiff picked up her belongings, left the household, and shortly thereafter began her action for divorce. Porter, plaintiff's son, testified that he told Otto that his Mother, who herself was ill, was not going to take care of him any further unless he got his property back so that she could expect something out of it.

George, called by counsel for plaintiff as an adverse party, testified that his father had never discussed with him the subject of making a joint tenancy deed; that he never had seen the deed prior to his father's death; and that he had paid no financial consideration to Otto.

The trial court, after reciting the facts at some length and referring to several Colorado court decisions, declared the evidence insufficient to show undue influence by or on behalf of George over his father and that, "There is nothing at all upon which we can base a decree to cancel the deed, * * *."

The grounds upon which plaintiff in error relies for reversal are set forth in the summary of argument, as follows: (A) Judgment of dismissal was unwarranted at the close of plaintiff's case. (B) The judgment of dismissal was inconsistent with equity. (C) It was not necessary to prove that George O. Moedy was a participant in the fraud; and (D) Dismissal was contrary to public policy.

Since all the grounds actually are contained within the first point, they will be considered together. If the judgment for dismissal was improper for any reason, it should not be affirmed.

At the outset it is admitted by counsel on behalf of plaintiff that a husband has a right to convey his prop-

erty to another without consent of his wife, providing the transfer is absolute and not intended as a fraud on the rights of the wife to support and maintenance or to share in the husband's estate after his death.

First, it is contended that if such deed be executed by the husband with intent to deprive the wife of support and right of inheritance, "it should be considered a fraud on the wife's rights," and void under section 17, chapter 71, '35 C.S.A., the applicable part thereof being as follows: "Every conveyance * * * made with the intent to hinder, delay, or defraud creditors *or other persons* of their lawful suits, damages, forfeitures, debts or demands, * * * shall be void." (Emphasis supplied) Reliance is had on the opinion in the case of *Smith v. Smith,* 22 Colo. 480, 46 Pac. 128 (reported on second appeal in 24 Colo. 527, 52 Pac. 790) and followed in *Grover v. Clover, Admr.,* 69 Colo. 72, 169 Pac. 578.

In the Smith case the learned author of the opinion did not specifically state that the statute of frauds itself was applicable, but after reference to various statutes relating to the rights of a wife to inheritance, and principles pertaining to her rights of support, he said that where it appears that the husband's conveyance of his property was colorable merely and was made with intent to deprive the wife of these benefits, it "is as much of a fraud on the part of the husband as it is for a debtor * * * to put his property beyond his control," and that, "The same principle should govern in this case." While the theory as so announced in the Smith case has not been definitely overruled by this Court, it has been disapproved by not being followed. The statute of frauds was specifically relied upon by plaintiff in error as one of the grounds for reversal in *Norris v. Bradshaw,* 96 Colo. 594, 596, 45 P. (2d) 638, wherein Mr. Justice Holland, author of the opinion, stated: "To hold that the possibility of a claim for a widow's allowance might exist and in effect constitute a debt owing by deceased in his lifetime, such as would defeat the right of a husband to

transfer and give away, in bona fide transactions, his property, would be to render the ordinary commercial transactions of life unstable. As to this matter, the wife does not bear the relation of a creditor. During coverture, she has no interest in the husband's personal property, except to the extent of his liability for her support, which she may enforce, if the property in his hands can be reached. The husband's personal property is free of any vested interest of the wife, and the law gives him absolute and unqualified dominion over it. It follows that he can dispose of it during his lifetime, by sale or gift, at will, without transcending his legal rights." Similarly the question arose in *Burton, Admx. v. Burton,* 100 Colo. 567, 569, 69 P. (2d) 307, in which the court said: "It is urged that the trial court erroneously held that Mrs. Burton was not in the position here of a judgment creditor. That ruling is in harmony with our former decisions. (Citing authorities)." To these specific rulings we might add further that under the doctrine of *ejusdem generis* the statute of frauds has no applicability to questions of the nature here presented.

It next is contended that plaintiff established a prima facie case, and that thereupon the burden shifted to defendant to prove that the transaction was bona fide. While such rule may be applied in certain other types of action, it is not applicable here. *Mehlbrandt, Admx. v. Hall,* 121 Colo. 165, 169, 213 P. (2d) 605. The Smith case, supra, was distinguished in *Phillips v. Phillips,* 30 Colo. 516, 71 Pac. 363, where, in reversing the judgment of the trial court, the basis for our present rule was announced that, a husband may dispose of his property for the express purpose to defeat his wife's rights to maintenance and to share in his estate "unless the transaction be colorable merely." Cited in that connection is the following from Kerr on Fraud and Mistake, page 220, which, for that matter, was quoted with approval in the Smith case, the quotation therefrom reading as follows: "There can be no doubt of the power of a husband to dispose

absolutely of his property during his life, independently of the concurrence, and exonerated from the claim of his wife, provided the transaction is not merely colorable, and be unattended with circumstances indicative of fraud upon the rights of the wife. If the disposition of the husband be *bona fide*, and no right is reserved to him, though made to defeat the right of the wife, it will be good against her."

The above quotation from Kerr again was cited with approval and quoted in our decision in *Thuet v. Thuet*, 128 Colo. 54, 260 P. (2d) 604. In *Ellis v. Jones*, 73 Colo. 516, 216 Pac. 257, in reversing the judgment of the trial court, we held that the mere fact that a deed of one spouse was made with the intention of depriving the other of his inheritance does not for that reason render such deed invalid. In addition it must be shown that such deed is "merely colorable," defined as being "counterfeit, feigned, having the appearance of truth * * * not really intended as a deed." If the deed is genuine, it is valid. "There can be no fraud in doing a lawful thing."

In the instant case mental competency is not an issue, but it is contended that the evidence shows Otto to have been dominated by his son George, and that the deed was the result of such undue influence. No word of direct evidence to this effect is contained in the record, but it is said that it must be presumed from the circumstances shown. In addition to the rule which forbids us to speculate upon the evidence, there is another which demands that a deed may be declared void only upon proof of undue influence, the burden thereof resting upon the one asserting it to prove that degree of improper influence upon the grantor sufficient to overcome his will and to cause him to do that which as a free agent would not have been done. *Tost v. Smies*, 74 Colo. 435, 216 Pac. 545.

We find this rule ably stated in *Anderson v. Lindgren, Admr.*, 113 Colo. 401, 406, 157 P. (2d) 687. "There is no doubt that the mother was influenced by her affection

and confidence in her son and by her gratitude to him and his family for years of devotion and service, for which little was ever paid. Hatred and indifference is not necessary to sustain a deed from mother to son nor is gratitude or affection from the mother to the son fatal to it. The only undue influence which will void a deed is an unlawful or fraudulent influence which controls the will of the grantor. The natural influence of affection of a parent for a child is neither fraudulent nor illegal, and courts will not set aside a deed because it is induced by such an influence unless it should appear from the evidence that this influence was purposely and improperly exercised to confuse the judgment and to overcome the free will of the grantor. No such use of influence can be found in this record. The undue influence which is sufficient to set aside a conveyance upon a proper and timely application therefor exists where there is a forceful assumption of a dominant influence of the grantor. In order to set aside a conveyance, the undue influence must be such as to overcome the will of the grantor to the extent that he is prevented from voluntary action and is deprived of free agency."

There are instances where even though the conveyance be between parent and child, it is clearly shown that there was, in addition, a relation of trust and confidence. In the instant case, however, as in *Burton, Admx. v. Burton, supra,* "There is no evidence to support the claim of special trust and confidence save the blood relationship and this is insufficient." See, also, *Fister, Admr. v. Fister,* 122 Colo. 432, 435, 222 P. (2d) 620.

In addition to blood relationship between Otto and George it is contended that other "badges of fraud" are that the conveyance was made without the consent of plaintiff; that it deprived her of her rights to support and inheritance; and that the deed was delivered to a third party and not to the grantee, all of which are answered adversely to plaintiff's position in the recent case of *Thuet v. Thuet, supra;* in which it also was held

that the grantee need not even have knowledge of the deed. See, also, *Bostron v. Bostron,* 128 Colo. 535, 265 P. (2d) 230.

■ ■ It is contended that the trial court erred in entering judgment of dismissal at the close of plaintiff's case. Since the trial court actually disposed of the case upon its merits, how can it logically be said that hearing the defendant's side of the controversy could have resulted to plaintiff's benefit? The findings of the trial court that no undue influence was shown, under the authority of decisions cited by the court and based upon ample supporting evidence, may not be disturbed by us upon review. *Mehlbrandt, Admx. v. Hall, supra.* A judgment of dismissal is entitled to every presumption of regularity. *Nelson v. Centennial Casualty Co.,* 130 Colo. 66, 273 P. (2d) 121.

The findings of the trial court being amply justified by the record, and its judgment being in conformity with the law, it should be, and hereby is, affirmed.

MR. JUSTICE HOLLAND dissents.