[No. 23609. Department Two. June 30, 1932.]

SAMUEL H. PILES et al., *Appellants*, v. WALTER G. BOVEE et al., *Respondents*.[1]

[1]Reported in 12 P. (2d) 914.

*Preston, Thorgrimson & Turner,* for appellants.
*Poe, Falknor, Falknor & Emory,* for respondents.

HOLCOMB, J.—This is an action to recover rent due on a lease. James B. Howe, one of the lessors, died on March 4, 1930, and Rose F. Howe, his widow and executrix of his last will and testament, joined in the suit in her own behalf and as such executrix.

On September 4, 1929, Samuel H. Piles, Rose F. Howe and James B. Howe, as lessors, leased the premises in question for a long term to Walter G. Bovee, as lessee, who took possession of the premises under the lease. On March 28, 1930, Bovee assigned the lease to the Bovee Hotel Company, a corporation, which assignment was accepted by that corporation.

Bovee was married to Bessie C. Bovee on January 20, 1927, prior to the execution of the lease to him. Bovee had owned a certain hotel in Seattle from October, 1925, to July, 1929, when he sold that hotel for $75,000, at which time he had separate property and securities of the value of $65,000 to $75,000, and at the time of his marriage, therefore, had no community property.

After selling that hotel, he negotiated the lease with Mr. Piles and Mr. Howe for the premises leased by them. After taking the lease from them and assigning it to the Bovee Hotel Company, rent was paid to the lessors up to and including January 1, 1931. Four installments of rent of $1,500 each, and interest thereon, became delinquent. The Bovee Hotel Company, having become insolvent, passed into the hands of a receiver.

Having introduced the lease and assignment thereof, and it having been admitted that the $6,000 rentals and interest thereon were in default, and that the burden was on respondents to show the separate character of

the lease obligations, appellants rested their case. Respondents then assumed the burden of showing the separate character of the obligations under the lease, and introduced evidence by Bovee and Mrs. Bovee tending to show that the lease was the separate property and obligation of Walter G. Bovee alone.

Bovee testified, over the objection of appellants, that he owned and operated the other hotel from October 1, 1925, to July, 1929; that he married Bessie C. Bovee on January 20, 1927, and in July, 1929, he sold the other hotel for $75,000, and had separate property and securities to the value of $65,000 to $75,000, and had no community property at that time; that after selling his interest in the other hotel, he negotiated the lease with Messrs. Piles and Howe for the premises leased by them.

He also testified, over objection, that he paid a $3,000 premium, for a bond required by paragraphs four and five of the lease providing for the erection of a building on the real estate, to the Union Indemnity Company, and turned over $60,000 in securities to that company to secure them against loss under the bond. The money so paid was derived from the sale of the other hotel. He borrowed some money from a bank, signing a note therefor, and securing the loan by putting up the other hotel contract as collateral. He also paid $3,000 to a broker for insurance and a general adjustment on the property leased. He paid out $5,000 in taxes on the property involved to the county treasurer, using funds received from the other hotel contract then in escrow with the bank.

He collected about $900 a month, and paid a deficiency rental of $600 to $700 each month from funds derived from the sale of the other hotel. These payments he testified were from his separate property. His principal business before and after his marriage

was as operator of hotels, and, prior to the execution of the lease involved herein, he was the operator of the other hotel referred to and garage in connection therewith. His salary for so doing was $250 per month, which was used up in living expenses.

Another witness testified corroborating Bovee's testimony regarding the loan from the bank and the transaction in connection therewith, and further testified that Bovee and Mrs. Bovee each had had individual checking accounts for several years.

Mrs. Bovee testified, over objection, to her marriage with Walter G. Bovee on January 20, 1927; that no property was acquired by them through their joint efforts after marriage; that Bovee sold the other hotel in July, 1929, for $75,000; that at that time he had between $50,000 and $60,000 in securities, most of which he accumulated before marriage, owning the other hotel when married; that, after the sale of that hotel, he entered into the lease involved herein, with which she had nothing to do, and he alone was interested in the lease; that he put stocks and bonds he owned and payments received from the sale of the other hotel into the lease involved herein. She testified that, at the time of the lease, Bovee put up about $65,000 worth of stocks and bonds to the bonding company, and at that time she gave Bovee over $18,000 worth of securities, for which he gave her an assignment of the other hotel contract a day or two before the lease in this suit. That loan was subsequently repaid.

She further testified that, at the time of their marriage, both she and Bovee had individual business, and each conducted and invested his or her own money as each saw fit. All business was separate, and there was no community property. Her money was derived from insurance on the death of her first husband about eight years before. Also, over specific objection, she testified

that, at the time Bovee entered into this lease, he and she understood that he was to enter into the lease individually, as his sole separate property was involved, and she did not approve of the venture.

The assignment of the lease to the Bovee Hotel Company was introduced in evidence by appellants showing that Mrs. Bovee executed the instrument with Bovee, and that she was secretary and a stockholder of the Bovee Hotel Company, and signed the assignment as secretary thereof and also as an individual.

Appellants emphasize the absence of any testimony that they knew that Bovee signed the lease in his separate capacity respecting only his separate property; or that they knew that he had separate property; or that Mrs. Bovee objected to his signing the lease; or that they knew that the Bovees had an understanding respecting the character of the lease as separate property; or that the moneys invested and paid to third parties, or to appellants, were paid from Bovee's separate estate; or that appellants had agreed to accept the individual liability only of Bovee, releasing the community.

The trial court, after receiving all the evidence, entered judgment in favor of appellants against respondent Bovee, in his individual capacity, and against his assignee, the Bovee Hotel Company, refusing to enter judgment against Bovee and his wife as a marital community.

It is from the last refusal that appellants have appealed.

Appellants insist that the admission of the testimony of respondents, above detailed, was in contravention of the provisions of Rem. Comp. Stat., § 1211, which provides that, where an administrator or executor sues as such, then a party in interest or to the record shall not be permitted to testify in his own

behalf as to any transaction had by him with the deceased person whose estate is involved in the proceeding.

In support of their contention, appellants cite *Denis v. Metzenbaum,* 124 Wash. 86, 213 Pac. 453, and its cited precedents, as identical in principle with this case.

That action was one by an executor upon a note given to the deceased by two signers. Metzenbaum, one of the signers, offered to prove that, immediately prior to the signing of the note but in the absence of the deceased, he and the other maker, McCafferty, agreed that Metzenbaum should sign the note as an accommodation maker; that Metzenbaum's wife knew nothing about signing the note and never ratified the same; and that the community of Metzenbaum and his wife never received any consideration for signing the note. It was Metzenbaum's contention that, if there were any liability in the action upon the note, the liability was against him personally and not against the community of himself and wife.

It was there distinctly held that the execution and delivery of the note was a transaction with the payee of the note. It was therefore held that, since the lips of the payee were sealed by death, Metzenbaum could not be heard to testify as to any such transaction as he offered to prove. His offer, of course, amounted to an attempt to contradict the tenor of the note, on its face a negotiable instrument. Two cases were cited in the *Metzenbaum* case to sustain its holding: *Spencer v. Terrel,* 17 Wash. 514, 50 Pac. 468, and *Kline v. Stein,* 30 Wash. 189, 70 Pac. 235. *Kauffman v. Baillie,* 46 Wash. 248, 89 Pac. 548, and *Engstrom v. Peterson,* 107 Wash. 523, 182 Pac. 623, were distinguished by the author of the *Metzenbaum* opinion.

The case of *Bay View Brewing Co. v. Grubb,* 31

Wash. 34, 71 Pac. 553, not cited, would seem to have been a more apt precedent in the *Metzenbaum* case, as the reasoning was very similar in the *Grubb* case *supra,* and it was one involving a promissory note and an attempt to vary or contradict its terms by parol testimony by an endorser. We there held that, since it was admitted that the execution and delivery of the note was a transaction, then a party in interest, the other being dead, could not be heard to detail what that transaction was, or to say that there was no transaction, and he could not be heard to say that a waiver of demand and notice was not on the back of the note when he endorsed it.

The situation in this case was very tersely and aptly summed up by the trial judge as follows:

"The statement of facts in this case fails to disclose any evidence given by either Mr. or Mrs. Bovee which might, by the wildest stretch of imagination, have been denied by Mr. Howe if alive. Their testimony exclusively concerned the accumulation of the property and money which went into the lease and the dealings between themselves, regarding which it is certainly not to be presumed that Mr. Howe could have had any knowledge. There was not a word regarding any statements made by him or dealing had with him, nor was there any attempt to alter the character of the lease. . . .

"It is true that when Bovee signed this lease, the law presumes that he did it for the benefit of the community. But this presumption is a mere rule of evidence, of procedure, not a conclusive presumption. It simply makes out a prima facie case against the community which may be rebutted by any evidence to the contrary. The competency of this evidence is measured by the same rules as the competency of any other evidence."

We agree with the conclusion of the trial court. As was observed in the *Metzenbaum* case, *supra,* that, while it was true that, were the deceased living, he

could not have testified to conversations between Metzenbaum and McCafferty in his absence, he could have testified as to whom he loaned the money, and would have been in a position to disprove, or at least contradict, all of the proffered testimony. That is not true in the present case. The Bovees simply testified as to the origin of their estates, and the facts to which they testified tended to show that it was all separate property of Bovee. Mr. Howe could not have contradicted the testimony, if present, and there is not a word of testimony as to any statement made by him or in his presence concerning the transaction. This case is controlled by *Bardsley v. Truax,* 64 Wash. 400, 116 Pac. 1075, and *Slavin v. Ackman,* 119 Wash. 48, 204 Pac. 816, and cases cited.

We conclude, therefore, that the testimony of the Bovees was not incompetent under § 1211 and our decisions.

Lack of notice to, or knowledge on the part of, appellants does not affect the question, nor the fact that the arrangement between the Bovees was "secret," make it an illegal contract as between husband and wife.

The evidence on behalf of the Bovees being competent, it follows, as a matter of course, that it must be held that the leasehold and obligations thereunder were the separate property and obligation of Bovee. Under numerous decisions by this court, it is now hardly debatable that the lease constituted a *prima facie* charge against the community, but, as observed by the trial judge, that is a legal presumption rebuttable by satisfactory evidence. That is the well settled law in this state, as shown by many of our decisions and the cases cited in most of them. *Union Securities Co. v. Smith,* 93 Wash. 115, 160 Pac. 304,

Ann. Cas. 1918E, 710; *Kanters v. Kotich,* 102 Wash. 523, 173 Pac. 329; *Merrick v. Appenzeller,* 115 Wash. 181, 196 Pac. 629; *Jacobs v. Hoitt,* 119 Wash. 283, 205 Pac. 414; *In re Brown's Estate,* 124 Wash. 273, 214 Pac. 10; *Rawleigh Company v. McLeod,* 151 Wash. 221, 275 Pac. 700, 64 A. L. R. 238; *Merritt v. Newkirk,* 155 Wash. 517, 285 Pac. 442; *Hargis v. Hargis,* 160 Wash. 594, 295 Pac. 742.

We conclude that the judgment of the trial court was right, and it is affirmed.

TOLMAN, C. J., MAIN, BEALS, and MILLARD, JJ., concur.

