[No. 46837. En Banc. December 31, 1980.]

PACIFIC GAMBLE ROBINSON CO., *Petitioner,* v. CONRAD C. LAPP, ET AL, *Respondents.*

*Ryan, Swanson, Hendel & Cleveland,* by *Morey G. Priest,* for petitioner.

*Bruce G. Hand,* for respondents.

WILLIAMS, J.—In 1962, Conrad C. Lapp acquired 100 percent of the stock of the Joslyn Fruit Company (Joslyn), a Colorado corporation. In 1975, Conrad Lapp married his present wife, Laura D. Lapp, in Colorado, where both were residents. Under Colorado law, the stock of Joslyn remained Mr. Lapp's sole property, which he could encumber or convey without the consent of his wife. *Goldberg v. Musim,* 162 Colo. 461, 427 P.2d 698 (1967); *Bostron v. Bostron,* 128 Colo. 535, 265 P.2d 230 (1953).

By the spring of 1977, Joslyn was in severe financial difficulty and indebted to petitioner Pacific Gamble Robinson Company in the amount of $34,710.70. In an effort to assist Lapp and to enable Joslyn to remain in business, petitioner agreed to continue to supply produce if Lapp signed a promissory note on which he would be personally liable

along with Joslyn. On April 14, 1977, the promissory note for $34,710.70 was executed in Colorado by Lapp individually and on behalf of Joslyn. Mrs. Lapp did not sign the note. Under Colorado law, Mr. Lapp's earnings and property alone were subject to that debt, and his wife could not object to the encumbrance. *Imel v. United States,* 184 Colo. 1, 8, 517 P.2d 1331 (1974).

In July of 1977, Joslyn and Mr. Lapp defaulted on the note. In September, the Lapps moved to Washington. On January 31, 1978, petitioner brought this action in Washington against Joslyn, Conrad Lapp individually, and the Lapp marital community to recover the balance due and owing on the note.

The trial court granted summary judgment against Conrad Lapp individually but refused to hold that the community had incurred any legal obligation. Petitioner appealed from that portion of the judgment dismissing the marital community. In a split decision, the Court of Appeals affirmed the trial court. *Pacific Gamble Robinson Co. v. Lapp,* 24 Wn. App. 795, 604 P.2d 1300 (1979). We reverse.

This case presents the following issue: Is the creditor on an obligation incurred by one spouse in a foreign, noncommunity property state where both spouses were domiciled, restricted in its recovery to the separate property of the obligor spouse, as the term "separate property" is defined by Washington law, after the couple moves to Washington?

Washington has adopted the so-called "center of gravity" or "most significant relationship" approach to contract choice of law problems. In the absence of an effective choice of law by the parties, the validity and effect of a contract are governed by the law of the state having the most significant relationship with the contract. *Potlatch No. 1 Fed. Credit Union v. Kennedy,* 76 Wn.2d 806, 459 P.2d 32 (1969); *Baffin Land Corp. v. Monticello Motor Inn, Inc.,* 70 Wn.2d 893, 425 P.2d 623 (1967); Restatement (Second) of Conflict of Laws § 188 (1971).

■ Under the law of this state, a debt is presumed to be a community obligation. *Oregon Improvement Co. v. Sagmeister*, 4 Wash. 710, 30 P. 1058 (1892). The burden of proving that a debt is not a community obligation rests on the community. *Beyers v. Moore*, 45 Wn.2d 68, 70, 272 P.2d 626 (1954). If the obligation is incurred by the community, then community property, including the earnings of both spouses, is liable for the debt. *Beyers*, at 70; RCW 26.16-.030. On the other hand, if a debt is characterized under Washington law as separate, or for the benefit of the husband's separate property, then it may not be satisfied from the earnings of either spouse, because earnings during coverture are community property. RCW 26.16.030; RCW 26.16.200.

In Colorado, however, as we explain more fully below, the law subjects only the *husband's* property, including earnings, to payment of a debt incurred by him alone. *Imel v. United States*, at 8. This is a result not possible under Washington law. *But see deElche v. Jacobsen*, 95 Wn.2d 237, 622 P.2d 835 (1980).

Accordingly, if this transaction had taken place entirely in Colorado, with the Lapps remaining there as domiciliaries, petitioner would have been entitled to judgment against only Conrad Lapp's property, including his earnings. If the transaction had occurred entirely in Washington, however, regardless of whether the debt were characterized as a community or a separate obligation, petitioner would not be entitled to have its judgment satisfied from Conrad Lapp's wages alone. Depending on how the obligation was characterized, petitioner could alternatively reach the wages and earnings of both spouses, or of neither spouse.

Since the result is different under the law of the two states, we are not faced with a "false conflict", as was found by the court in *Pacific States Cut Stone Co. v. Goble*, 70

Wn.2d 907, 425 P.2d 631 (1967).[1] Rather, there is a "real" conflict of laws, making this situation analogous to that faced by this court in *Potlatch No. 1 Fed. Credit Union,* where we said:

> This case presents a single issue . . ., and that is whether the community of a cosigner of a note may be held liable on the note although the community derived no benefit therefrom.

*Potlatch No. 1 Fed. Credit Union,* at 811.

> The legislatures and courts of the two states have made conflicting policy decisions with respect to this question. Idaho has chosen to recognize the interests of creditors over the interests of marital property in these situations. Washington has taken the opposite view. *These two policy decisions come into direct conflict where, as here, the controversy involves an Idaho creditor and a Washington marital community.*

(Italics ours.) *Potlatch No. 1 Fed. Credit Union,* at 808–09.

---

[1]The usual meaning of "false conflict" is that there is no conflict between the laws of two states. That is, "[i]f the laws of both states relevant to the set of facts are the same, or would produce the same decision in the law suit, there is no real conflict between them and the case ought to be decided under the law that is common to both states." R. Leflar, *American Conflicts Law* § 93, at 188 (3d ed. 1977).

In fact, *Pacific States Cut Stone Co. v. Goble,* 70 Wn.2d 907, 425 P.2d 631 (1967), was in error in finding a false conflict. The case involved a debt incurred in Oregon by two husbands who were Washington residents. The result under Oregon law *would not* subject the wives' earnings to the debt, because their wages were separate property, *as that term is defined in Oregon.* Ore. Rev. Stat. 108.050. The result under Washington law *would* subject the wives' earnings to the debt, because (1) the debt was a community obligation, (2) community property was reachable to satisfy it, and (3) the wives' earnings *were community property in Washington.* Thus, a real, not false, conflict was presented in the *Pacific States Cut Stone Co.* case, although the court failed to recognize it.

In spite of the confusion in the *Pacific States Cut Stone Co.* opinion, it has been widely heralded, apparently because of its salutary overruling of a long line of precedent which had prevented out–of–state creditors from reaching assets that would have been available to Washington creditors. *See* Cross, *The Community Property Law in Washington,* 49 Wash. L. Rev. 729, 843 (1974); Trautman, *Evolution in Washington Choice of Law—A Beginning,* 43 Wash. L. Rev. 309, 312–13 (1967); R. Weintraub, *Commentary on the Conflict of Laws* 367 n.57 (2d ed. 1980); R. Leflar, *American Conflicts Law* § 233, at 474 (3d ed. 1977).

In such a case, we apply the most significant relationship test, which is summarized in the Restatement, *supra* at § 188, p. 575.

(1) The rights and duties of the parties with respect to an issue in contract are determined by the local law of the state which, with respect to that issue, has the most significant relationship to the transaction and the parties under the principles stated in § 6.

(2) In the absence of an effective choice of law by the parties (see § 187), the contacts to be taken into account in applying the principles of § 6 to determine the law applicable to an issue include:

(a) the place of contracting,
(b) the place of negotiation of the contract,
(c) the place of performance,
(d) the location of the subject matter of the contract, and
(e) the domicil, residence, nationality, place of incorporation and place of business of the parties.

These contacts are to be evaluated according to their relative importance with respect to the particular issue.

(3) If the place of negotiating the contract and the place of performance are in the same state, the local law of this state will usually be applied, except as otherwise provided in §§ 189–199 and 203.

■ As we observed in *Potlatch No. 1 Fed. Credit Union*, in applying this test we do not merely count the contacts between each state and the transaction at issue. "Rather, these contacts are guidelines indicating where the interests of particular states may touch the transaction". *Potlatch No. 1 Fed. Credit Union*, at 810. Moreover, "[t]hese competing policies must also be weighed against the justified expectations of the parties." *Potlatch No. 1 Fed. Credit Union*, at 810. *See* Restatement, *supra* at § 188, comment *c*, p. 578. *See also* Powers, *Formalism and Nonformalism in Choice of Law Methodology*, 52 Wash. L. Rev. 27, 60–62 (1976); Sedler, *The Contracts Provisions of the Restatement (Second): An Analysis and a Critique*, 72 Colum. L. Rev. 279, 311 (1972).

■ Applying these principles to the present case, we think it plain that Colorado has numerous governmental

interests in this transaction. The entire transaction occurred in Colorado. Petitioner was doing business in Colorado, and the Lapps were domiciled in Colorado at the time of the execution of the note, which was signed in Colorado by Mr. Lapp individually and on behalf of a Colorado corporation. Moreover, both parties apparently contemplated that all performance was to be in Colorado. We may assume that Colorado's interest is to ensure the predictability of business relations and to prevent the flight of debtors to other states to avoid payment of otherwise legitimate debts.

What is Washington's interest in the note at issue? Clearly, Washington has a general interest in protection of marital communities from the entirely separate debts of one spouse. RCW 26.16.010, .020.[2] But Washington had no connection whatever with the present transaction until the Lapps established their domicile here just 2 months after the note went into default. While the record demonstrates no cause and effect relationship between the default and the parties' move to Washington, we may safely assume that this state has no policy interest in maintaining within its borders a sanctuary for fleeing debtors.

---

[2]It may be noted, however, that the Washington policy in favor of the protection and predictability of the marital property provisions is not always followed strictly, but has been modified by this court and the legislature in some circumstances. In the case of *deElche v. Jacobsen,* 95 Wn.2d 237, 622 P.2d 835 (1980), for example, the court has decided that a tort–feasor's share of community property, including wages, may be available for a judgment on a separate tort. This is so, even though (1) the debt was incurred during the marriage, (2) the debt was characterized as "separate", because it was not incurred for the benefit of the community, and (3) this type of community property has not heretofore been available to a plaintiff in such an action. Moreover, RCW 26.16.200, the so–called "marital bankruptcy" statute, provides that the earnings and accumulations of a spouse shall be available to creditors for the satisfaction of debts incurred by that spouse prior to marriage for a period of 3 years from the date of the marriage. Thus, although neither of these incursions on the traditional community property rule as to separate debts of a spouse applies to the facts of this case, it is clear that neither this court nor the legislature currently adheres to the rule that the marital property, including the wages of a debtor spouse, are under all circumstances to be insulated from the claims of a creditor on a separate debt.

Turning to the expectations of the parties, we think that both spouses could reasonably expect at the time the note was executed that the transaction would be governed by Colorado law. Since the Lapps had long been domiciled in Colorado, and remained there some months after the note was signed, they could not justifiably believe that the obligation could be fairly avoided by the device of removing to a state where a husband's wages would not be subject to the debt. *See Pacific States Cut Stone Co.,* at 913.

Petitioner was aware that Joslyn was a Colorado corporation, and had been so at least since 1962 when Conrad Lapp acquired all its stock. Petitioner knew that the Lapps had been Colorado domiciliaries from the time of their marriage up to and including the time the note was signed. As between Colorado, the state of the debtor's domicile, and a later possible domicile, a creditor would reasonably expect that Colorado law would apply. Although petitioner's principle place of business is in Washington, petitioner was doing business in Colorado and had willingly subjected itself to Colorado law by entering into a contract with a Colorado resident and could justifiably assume that the Colorado law would likewise apply to petitioner's business debtor. A creditor need not anticipate that a debtor may avoid a debt merely by moving to any of 49 other states.

It is thus plain that all parties to the contract would undoubtedly have assumed Colorado law to apply, if they had considered the matter. Moreover, it is clear to us that the numerous contacts, competing policies, and justifiable expectations of the parties show Colorado's interest in the contract to be far more significant than Washington's, *Potlatch No. 1 Fed. Credit Union v. Kennedy,* 76 Wn.2d 806, 811–13, 459 P.2d 32 (1969), and we accordingly apply Colorado law. This conclusion is consistent with the Restatement view, which states:

(3) If the place of negotiating the contract and the place of performance are in the same state, the local law of this state will usually be applied, except as otherwise provided in §§ 189–199 and 203 [not relevant here].

Restatement (Second) Conflict of Laws § 188, at 575 (1971). Moreover, the parties *agree* that Colorado law applies to determine the validity of the debt; indeed, the debtor pleaded Colorado law.

Our analysis of Colorado law discloses the following: Unlike Washington, Colorado is not a community property state and does not use the term "separate property" when referring to a husband's sole property. Rather, "separate property" is a statutory concept designed to relieve married women of the historic disabilities of coverture under the common law. *Hedlund v. Hedlund,* 87 Colo. 607, 290 P. 285 (1930); *Tuttle v. Shutts,* 43 Colo. 534, 96 P. 260 (1908); *Palmer v. Hanna,* 6 Colo. 55 (1881). All other property not jointly owned is the husband's whether acquired in such a way as to make it either separate or community property under Washington law. A debt incurred by the husband in Colorado without the consent of the wife may not be satisfied from the wife's property, including her wages. Colo. Rev. Stat. 14–2–201, 14–2–203, 14–10–113. It is not accurate, therefore, to state that the husband's "separate property" under Colorado law is subject to the claims of creditors on his separate obligations. Rather, only the wife may own separate property as that term is understood in Colorado. Since application of community property concepts is unknown in Colorado, we do not speak in terms of these concepts when we apply Colorado law.

It follows that, in Colorado, all property of the Lapps would be subject to Mr. Lapp's debt to petitioner except Mrs. Lapp's separate property, including her earnings. *Imel v. United States,* 184 Colo. 1, 8, 517 P.2d 1331 (1974). Thus, a fair application of Colorado law to this debt in an action brought in Washington is that the same property subject to payment of a debt in Colorado, including Mr. Lapp's wages and acquisitions, is likewise subject to payment of the debt in Washington, notwithstanding such

property is characterized as "community" under Washington law.[3]

The judgment of the Court of Appeals is reversed.

ROSELLINI, STAFFORD, BRACHTENBACH, DOLLIVER, and HICKS, JJ., concur.

HOROWITZ, J. (dissenting)—This case considers the remedy available under Washington law for a creditor of a married person who has signed a promissory note for payment of a debt incurred for the sole benefit of his noncommunity property. The trial court reached the correct result in refusing to hold the Lapp marital community liable on this note signed only by Mr. Lapp in Colorado with respect to and for the benefit of his noncommunity property. I therefore must dissent from the majority's reversal of the Court of Appeals decision upholding the trial court's dismissal of Pacific Gamble's claim against defendant Lapps' marital community.

As set forth in the majority opinion, this case concerns a contract debt originally incurred by Mr. Lapp in Colorado while the Lapps were domiciled in that state. The majority correctly notes that "the validity and effect of a contract are governed by the law of the state having the most significant relationship with the contract", *i.e.*, Colorado. Majority opinion, at page 343. I have no quarrel with this conclusion; it appears, at any rate, that under the laws of Colorado *or* Washington, the note must be considered in

---

[3]This result is consistent with the reasoning we employed in *Potlatch No. 1 Fed. Credit Union v. Kennedy,* 76 Wn.2d 806, 459 P.2d 32 (1969). Although we there concluded that Washington law should apply to the question whether the community was liable for the husband's suretyship obligation to an Idaho creditor, the result was reached through a careful analysis of all the factors. Had we found that Idaho had the most significant relationship to the transaction, it is clear we would have applied Idaho law and accordingly imposed liability on the Washington marital community.

*Potlatch No. 1 Fed. Credit Union* thus provides the analytical framework for deciding this case, although our conclusion requires us to apply foreign law. There is no persuasive authority for the view that the property liable on a debt is a question of remedy which must always be decided by the law of the forum.

default and judgment could be had against it. The contractual basis for an action on the breached contract to pay the debt made by Mr. Lapp is undisputed.

The majority errs, however, in thereafter concluding that simply because Colorado law will determine the "validity and effect" of the contract—*i.e.,* the note's enforceability and the breach of its terms—that Colorado law must also determine whether Pacific Gamble is entitled to collect its debt in Washington from the Lapps' community property, subsequently acquired in Washington, the Lapps' domicile. The majority makes its argument to this effect not on the basis of a Colorado judgment against the Lapps, but merely because of its view that the husband would have had the benefit of property characterized as community in this state to pay the debt had that property been earned in Colorado.

I cannot agree with the majority's analysis. The funds available to satisfy this judgment, even if rendered on the basis of another state's contract law, must be left to the law of the debtor's marital domicile and forum, Washington. In this case, Colorado law cannot be expected to resolve the question of liability of Washington community property for the debt, for no such concept of marital property ownership exists in Colorado. Our courts should look instead to Washington law to determine whether one spouse, acting alone, for the sole benefit of his sole business, can subject community property in Washington to liability on a debt such as that incurred by Mr. Lapp in this case. RCW 26.16.010–.020, and .200 clearly preclude such liability for Mr. Lapp's noncommunity debt.

Under Washington law, a separate debt, created in aid of the husband's separate business, and therefore not incurred for the benefit of the community, cannot be collected out of community property. This state's public policy is to protect the community marital property against a debt not incurred for its benefit. Colorado is not a community property state. Instead, it has a form of common law marital

property that prevents a wife's separate earnings and property from being subjected to the payment of her husband's debts.

The majority has compared the public policies of Washington and Colorado in protecting the interests of a spouse who has had no involvement in contracting her marital partner's debt. Then, by misapplying conflict of laws rules, the majority determines that Washington's public policy in this regard must yield to Colorado's, subjecting community property, earned in Washington by Washington domiciliaries, to the payment of the husband's debt, incurred in Colorado, a debt which would be separate in nature under Washington law. For the reasons set out below, I object to the majority's analysis and conclusion.

The case most extensively relied on by the majority, *Potlatch No. 1 Fed. Credit Union v. Kennedy,* 76 Wn.2d 806, 459 P.2d 32 (1969), in fact clearly supports the analysis set forth in this dissent. In *Potlatch,* this court applied *Washington* law, which was more protective of community property than the competing Idaho law, in determining the liability of the Washington marital community for a debt incurred by the husband in Idaho. As noted by the majority, our conclusion in *Potlatch* was based on an analysis of the "conflicting policy decisions" made by the legal systems of the two states. Majority opinion, at page 345, citing *Potlatch No. 1 Fed. Credit Union,* at 808. For the same reasons set out more fully in this opinion below, we there applied *Washington* law to determine the liability of the Washington marital community for a debt incurred in another state.

What the majority overlooks in its citation, on the strength of *Potlatch,* to Restatement (Second) of Conflict of Laws § 188 (1971), is the fact that the appropriateness of the application of a particular state's laws will depend on the issue being considered:

> Courts have long recognized that they are not bound to decide all issues under the local law of a single state. *See* Restatement (Second), Conflict of Laws § 188, *Comment*

*d . . . . Therefore, with respect to the issue now before us of whether the community property of Washington residents is subject to the suretyship obligation of the husband entered into with an Idaho company* with no benefit to the community, we hold that the law of Washington has the most significant relationship *to that portion of the transaction.*

(Italics mine.) *Potlatch No. 1 Fed. Credit Union v. Kennedy, supra* at 813. Restatement (Second) of Conflict of Laws § 188(1) itself, as cited in the majority opinion at page 346, sets out that the determination of the state with the "most significant relationship to the transaction" is to be accomplished *"with respect to an issue"* (italics mine) actually contested in the proceeding. Review of the conflict of laws principles with regard to the single issue of the source of funds available to satisfy a contractual obligation should lead to the conclusion, reached in *Potlatch,* that Washington law will determine the liability of the community property of a couple domiciled in Washington for a debt, wherever incurred, that is sued upon in Washington.

Without clearly identifying the problem presented by the distinction between contractual validity and contractual payment source of funds, *Potlatch* considered this question of the source of funds available to satisfy a contractual obligation in a manner that clearly draws this distinction in conflict of laws analysis. Neither cases nor commentaries in this country have considered the choice of law issues raised by jurisdictional differences in the classes of property available to satisfy the judgment for a litigant damaged by breach of contract:

In this area which is beset with highly significant differences among the several laws, conflicts problems have been widely discussed abroad. No similar treatment can be found in this country. Thus, for instance, neither interstate nor international conflicts cases seem to have been reported concerning the remedies available for the enforcement of contracts . . .

A. Ehrenzweig, *Conflict of Laws* § 125, at 357 (1962). The few foreign treatises available also offer no guidance in

determining how the source of funds for contract damages is to be determined in a case such as this, although most acknowledge the distinction in choosing the law to govern contractual validity and the law to govern the funds available for contractual damage recovery. However, I feel that in this case we should explicitly make this distinction between choice of law in contractual validity and in contractual damage recovery. This case concerns *no* issue of validity but considers instead only the source of funds for collection of contract damages. We should reaffirm the application of the law of the marital domicile and forum, Washington, to the question of the source of funds available for contract damages, because of the overriding interest this state has in consistent and conscientious application of the policies underlying the law of community property.

This examination of the policies of our community property law is entirely consistent with and necessary to arrive at a decision between the conflicting principles of law presented here. It is in the best tradition of modern conflict of laws analysis, considering the policies for application of one state's law, rather than another's because

> [t]he natural desire of every good court [is] to achieve justice by applying what it regards as intrinsically the better rule of law . . .

R. Leflar, *American Conflicts Law* § 4, at 7 (1968). *See also* Restatement (Second) of Conflict of Laws § 188, comment *c* (1971) ("The purpose sought to be achieved by the contract rules of the potentially interested states, and the relation of these states to the transaction and the parties, are important factors to be considered in determining the state of most significant relationship.") As noted by Mr. Justice Holmes, law is not a closed system that "can be worked out like mathematics." It is the duty of judges to "weigh considerations of social advantage."[4]

---

[4]Quoted in Cook, *Oliver Wendell Holmes: Scientist,* 21 A.B.A.J. 211, 212 (1925). *See also* O. Holmes, *Common Law* 35–36 (1881).

With this duty in mind, I examine the public policy behind Washington's community property law.

This state has a unique, progressive system of property ownership that affords marital partners equal control over community assets. RCW 26.16.030. Our law generally refuses to allow those assets to be burdened by the non-community debts of either spouse.[5] Washington's community property scheme reflects a policy which should not be subjected to the vagaries of out–of–state debt accrual; all marital communities in this state are afforded the protection and predictability of our community property provisions.

The practical result of the majority's analysis is to permit an out–of–state creditor to collect his debt from assets in this state which our law would forbid to a local creditor who has no claim to community property. As the Court of Appeals pointed out, had Mr. Lapp contracted this debt in Washington, only his separate property would have been subject to the debt. *Pacific Gamble Robinson Co. v. Lapp,* 24 Wn. App. 795, 800, 604 P.2d 1300 (1979). Joslyn Fruit was Mr. Lapp's noncommunity property, purchased by him prior to his marriage. It would be characterized as separate property under the law of this state. The obligation now sued upon by Pacific Gamble, which was undertaken for Joslyn Fruit's sole benefit, would have created no community liability if incurred in Washington. *Piles v. Bovee,* 168 Wash. 538, 12 P.2d 914 (1932); *Schramm v. Steele,* 97

[5]The majority relies on a wholly *statutory* exception to the rule that community assets are not subject to noncommunity debts. Majority opinion at page 347, footnote 2. RCW 26.16.200 was necessary to change the rule of a long line of cases refusing to allow recovery for antenuptial separate debts from the community property of newly married individuals. *See Katz v. Judd,* 108 Wash. 557, 185 P. 613 (1919). *See also National Bank of Commerce v. Green,* 1 Wn. App. 713, 463 P.2d 187 (1969) (refusing to give retroactive application to RCW 26.16.200 because it so clearly overruled earlier case law and altered the very nature of community property rights). The fact that these exceptions were accomplished only by legislation helps demonstrate the general strength and validity of the rule protecting community assets from noncommunity debts. *See deElche v. Jacobsen,* 95 Wn.2d 237, 622 P.2d 835 (1980) (Horowitz, J., dissenting).

Wash. 309, 166 P. 634 (1917). But by applying Colorado law to determine the remedy available to Pacific Gamble, the majority subjects community property, wages and property earned and owned in this state by Mr. Lapp, to execution. There is no reason or benefit to the people of this state in according such a preference to an out-of-state creditor.

We instead should look at the interests of the parties to this action for recovery of damages and at the policies of the states with which this action is connected. The plaintiff Pacific Gamble's principal place of business is Washington; presumably familiar with the law of this state, it could have prevented the result of which it now complains by, for example, the simple device of obtaining an agreement signed by husband and wife at the time the debt was incurred. *Household Fin. Corp. v. Smith,* 70 Wn.2d 401, 423 P.2d 621 (1967). The defendants are domiciled here, wholly subject to the benefits and liabilities inherent in our system of marital property ownership. The courts of this state must enforce any judgment for damages, determining the source of funds, the procedure for satisfaction, and all other mechanics of enforcing plaintiff's substantive contractual claim. The law of this state should apply. Washington's interest in this decision and its impact on our citizens' marital property rights is far greater than any continuing interest by Colorado in the remedy available for breach of a transitory contract sued upon in this state. *See Potlatch No. 1 Fed. Credit Union v. Kennedy, supra* at 813-14 ("We have seriously considered the governmental interest of the state of Idaho in protecting its creditors, but do not believe they are paramount in this case."). *See also O'Brien v. Shearson Hayden Stone, Inc.,* 90 Wn.2d 680, 686, 586 P.2d 830 (1978).

The law of Washington should determine the source of funds from which Pacific Gamble's damages for breach of contract can be had. Washington is the state with the most significant relationship to the single issue of the source of funds available for contract damages. *Potlatch No. 1 Fed.*

*Credit Union v. Kennedy, supra* at 813. Mr. Lapp's noncommunity debt cannot be satisfied from the marital community's property. We should affirm the dismissal of Pacific Gamble's suit against the Lapp marital community. I therefore respectfully dissent.

UTTER, C.J., concurs with HOROWITZ, J.