95 P.3d 313 (2004)
152 Wash.2d 92
Mary MULCAHY, Petitioner,
v.
FARMERS INSURANCE COMPANY OF WASHINGTON; Farmers Group Inc., d/b/a Farmers Insurance Group of Companies; and Farmers Insurance Exchange, Respondents.
No. 73647-2.
Supreme Court of Washington, En Banc.
July 15, 2004.
*314 Mary Mulcahy, Pro se.
Sidney Robert Snyder, Seattle, for Respondents.
Linda B. Clapham, Michael B. King, June A. Jackson, LANE POWELL SPEARS LUBERSKY LLP, for Amicus Curiae Washington Defense Trial Laywers.
Bryan Patrick Harteniaux, Spokane, for Amicus Curiae, Washington State Trial Lawyers.
CHAMBERS, J.
Mary Mulcahy was injured in a car accident in British Columbia. She settled her claim with the other driver. The other driver's insurer did not pay the whole settlement amount. Instead, it reduced its settlement pay out by the amount of first party insurance coverage Mulcahy was entitled to receive under British Columbia's universal compulsory automobile insurance law. It advised Mulcahy that her own insurance company was obligated to pay the difference. Mulcahy's own insurer disagrees.
Primarily, we must decide whether Washington courts may enforce an agreement between a Washington insurer and British Columbia that obligates the insurer to provide first party no-fault benefits to its own insureds in accordance with British Columbia's universal compulsory insurance law. We conclude, under the facts of this case, that this insurance company's contractual obligations may be enforced in Washington State by Washington courts.

FACTS
In May 1994, a Washington resident, Mulcahy, was driving her automobile in British Columbia, Canada. Her vehicle was struck by one driven by a British Columbia resident, Sidney Schneider. Mulcahy contends, and it is uncontested, that the collision was entirely the fault of Schneider. Although contested, Mulcahy also contends that she suffered serious injuries and, because her own insurer refused to pay the benefits to which she was entitled, she eventually lost her home and became destitute.
Schneider was insured by the Insurance Corporation of British Columbia (ICBC), the exclusive provider of compulsory automobile *315 insurance in, and operated by, the Province of British Columbia. Mulcahy had purchased an insurance policy in the state of Washington from Farmers Insurance Company of Washington (Farmers), which specifically covered her while driving in Canada. Farmers provided US$10,000 in personal injury protection (PIP)[1] benefits, which Farmers paid by April 4, 1995. It is Mulcahy's position that Farmers' agreement with British Columbia and her insurance policy obligated Farmers to provide first party no-fault benefits under British Columbia law up to Can$150,000. She also contends that because of her injuries and Farmers' failure to provide benefits, her health deteriorated, she was unable to support herself, she lost her home, and she was forced to live in her car and transitional housing.
Mulcahy is currently without legal counsel. She herself argued her case before this court. Earlier, she had retained a lawyer in British Columbia to pursue her personal injury claim against Schneider and his insurer, ICBC. More than five years after her collision, she entered into mediation with ICBC and agreed to settle her claim for a total of Can$375,000[2] in December 1999.[3] However, in 1986, Farmers had filed a power of attorney and undertaking, commonly referred to as a PAU. Filing a PAU allows American insurers to participate in Canada's reciprocal insurance scheme, which "ensures that a person who has entered into a motor vehicle insurance contract [outside the province] is recognized as insured in [the] province[ ]." Potts v. Gluckstein, [1992] 8 O.R.3d 556, 558 (Ont.Ct.App.). By filing the PAU, Farmers agreed to compensate its insureds, such as Mulcahy, when they are involved in an accident in British Columbia according to the same terms that British Columbia residents are compensated by ICBC. Because of the PAU filed by Farmers, Mulcahy's tort claim was reduced by Can$150,000, the amount of first party no-fault benefits required by British Columbia law to be paid by her own insurer. ICBC confirmed Mulcahy's tort settlement was reduced, in accordance with British Columbia law, by the amount of "benefits properly payable by Farmer's [sic]." Clerk's Papers at 634.
In March of 2000, Mulcahy filed suit in British Columbia seeking to enforce Farmers' contractual obligations under the PAU to provide British Columbia's universal compulsory insurance benefits to Farmers' insureds who operate motor vehicles within the province. She filed a virtually identical suit six weeks later in King County, Washington. Her complaint in King County also alleged a breach of her insurance contract, bad faith, and Consumer Protection Act (CPA), chapter 19.86 RCW, violations. A short time later and with assistance of counsel, Mulcahy filed two amended complaints.
Her complaints have not been substantively considered by trial courts in either nation. Mulcahy argues that Farmers' strategy has been to avoid adjudication of her claims on the merits. While Farmers has argued to the trial court, the Court of Appeals, and this court that a British Columbia court should decide the PAU issue on its merits, it has simultaneously sought to have the British Columbia courts avoid adjudication of the issue on its merits. First, Farmers moved the British Columbia Supreme Court to decline jurisdiction. After that court denied Farmers' motion, Farmers twice moved to dismiss the British Columbia action. The second motion to dismiss was based upon the *316 doctrines of comity, forum non-conveniens, res judicata, and abuse of process. These motions have been denied and Farmers is appealing the denial of dismissal.
In the meantime, in Washington, Farmers engaged in discovery and moved for summary judgment. Farmers argued that Mulcahy could not rely upon Canadian law to support her claims because she failed to properly plead foreign law. In addition, Farmers argued that under the PAU it is obligated to provide liability coverage, but not first party no-fault benefits, in accordance with British Columbia law. Farmers further argued that the PAU is not enforceable outside of British Columbia. Finally, Farmers argued that its only obligation under Washington law was to provide US$10,000 in PIP benefits. Without explanation, the trial court granted Farmers' summary judgment motion and entered an order dismissing Mulcahy's complaint. The Court of Appeals affirmed except to the extent that the trial judge may have applied British Columbia law on summary judgment. Mulcahy v. Farmers Ins. Co. of Wash., 114 Wash.App. 459, 476 n. 4, 58 P.3d 307 (2002). We granted review. Mulcahy v. Farmers Ins. Co. of Wash., 149 Wash.2d 1027, 78 P.3d 656 (2003).[4]

ANALYSIS
We review an order of summary judgment de novo and perform the same inquiry as the trial court. See Jones v. Allstate Ins. Co., 146 Wash.2d 291, 300, 45 P.3d 1068 (2002). Summary judgment is proper only when "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Civil Rule (CR) 56(c). All facts and reasonable inferences are considered in the light most favorable to Mulcahy, the nonmoving party. See Mountain Park Homeowners Ass'n v. Tydings, 125 Wash.2d 337, 341, 883 P.2d 1383 (1994). Farmers, the moving party, bears the burden of showing there is no genuine dispute as to any material facts. See Folsom v. Burger King, 135 Wash.2d 658, 663, 958 P.2d 301 (1998).

NOTICE OF FOREIGN LAW
First, we must determine whether Mulcahy has properly pleaded foreign law. A party who wishes to rely upon a foreign country's law must "give notice in his pleading of the foreign jurisdiction whose law he contends may be applicable to the facts of the case." CR 9(k)(2). The purpose of CR 9(k) is "to put one's opponent and the court on notice of the applicability of foreign law." Rodriguez v. Travelers Ins. Co., 54 Wash.App. 725, 728, 775 P.2d 973 (1989) (citing Byrne v. Cooper, 11 Wash.App. 549, 551, 523 P.2d 1216 (1974)).
In her complaint, Mulcahy specifically notified Farmers and the court that her tort claim in British Columbia had been reduced by Can$150,000 pursuant to British Columbia law. She explicitly informed both Farmers and the court of her reliance on British Columbia's compulsory automobile insurance statutes and regulations, which mandate first party no-fault benefits coverage up to Can$150,000. Additionally, she explicitly claimed Farmers, as a voluntary participant in the Canadian reciprocal insurance scheme, was obligated to provide her with coverage according to British Columbia law. Mulcahy cited to and provided the court and Farmers with copies of the foreign statutes, regulations, and cases upon which she relies.[5] We hold Mulcahy has met the requirements of CR 9(k)(2) and satisfactorily pleaded foreign law.

THE PAU
Before turning to the substance of the dispute, we note that Farmers gained two *317 important advantages by filing a PAU and voluntarily participating in Canada's reciprocal insurance scheme. First, Farmers is able to offer and charge its insureds for providing adequate coverage while driving in Canada. See Insurance (Motor Vehicle) Act, R.S.B.C., ch. 226, § 134(9) (1996); see also Potts, 8 O.R.3d at 558. Second, Farmers significantly reduces its liability when its insureds are at fault in motor vehicle accidents in British Columbia. When one of Farmers' insureds is at fault in a motor vehicle accident in British Columbia, Farmers avoids paying up to Can$150,000, which the tort victim is entitled to receive from ICBC. See Insurance (Motor Vehicle) Act, R.S.B.C., ch. 231, § 25(2) (1996); see also Ruckheim v. Robinson, [1995] 1 B.C.L.R.3d 46, ¶¶ 57, 59 (B.C.Ct.App.); accord Ins. Corp. of B.C. v. Royal Ins. Co. of Canada, [1999] 119 O.A.C. 360 (Ont.Ct.App.) (describing similar benefit to foreign insurers in Ontario).
In exchange for these advantages, Farmers agreed that "for accidents in B.C., it will compensate its insured according to the same terms that B.C. residents are compensated by their insurers." Diotte v. Ins. Corp. of B.C., [2000] 28 C.C.L.I.3d 125 ¶ 15 (B.C.Sup.Ct.); see also Anderson v. Co-Operators Gen. Ins. Co., [1990] 51 B.C.L.R.2d 93 (B.C.Ct.App.); accord Healy v. Interboro Mut. Indem. Ins. Co., [1999] 44 O.R.3d 404, at 409 (Ont.Ct.App.) (The reciprocal scheme "assures the same statutory guarantees to someone injured in an automobile accident in Ontario whether the ... automobile insurance contract was made in Ontario or another ... jurisdiction."). We now turn to whether British Columbia or Washington law applies to interpret the scope and enforceability of Farmers' agreement with British Columbia.

CHOICE OF LAW
Farmers argues that the PAU does not apply to litigation filed in Washington. We conclude that Canadian law applies and that under Canadian law, Farmers has obligated itself to pay no-fault first party benefits in conformity with Canadian law. Our conclusion is supported by the interpretation of Canadian provincial courts of their own law.
Since 1967, Washington courts have adhered to and applied the most significant relationship test to contract choice of law issues. Baffin Land Corp. v. Monticello Motor Inn, Inc., 70 Wash.2d 893, 425 P.2d 623 (1967). "In the absence of an effective choice of law by the parties, the validity and effect of a contract are governed by the law of the state having the most significant relationship with the contract." Pac. Gamble Robinson Co. v. Lapp, 95 Wash.2d 341, 343, 622 P.2d 850 (1980); Restatement (Second) of Conflict of Laws § 188 (1971) (hereinafter Restatement).
Section 188 of the Restatement provides a summary of the test to be applied:
"(1) The rights and duties of the parties with respect to an issue in contract are determined by the local law of the state which, with respect to that issue, has the most significant relationship to the transaction and the parties under the principles stated in § 6.
"(2) In the absence of an effective choice of law by the parties (see § 187), the contacts to be taken into account in applying the principles of § 6 to determine the law applicable to an issue include:
"(a) the place of contracting,
"(b) the place of negotiation of the contract,
"(c) the place of performance,
"(d) the location of the subject matter of the contract, and
"(e) the domicil, residence, nationality, place of incorporation and place of business of the parties.
"These contacts are to be evaluated according to their relative importance with respect to the particular issue."
Lapp, 95 Wash.2d at 346, 622 P.2d 850 (quoting RESTATEMENT § 188). Additionally, the expectations of the parties to the contract may significantly tip the scales in favor of one jurisdiction's laws being applied over another's. See Lapp, 95 Wash.2d at 346, 622 P.2d 850 (quoting Potlatch No. 1 Fed. Credit Union v. Kennedy, 76 Wash.2d 806, 810, 459 *318 P.2d 32 (1969)); accord RESTATEMENT §§ 6(2)(d), 188 cmt. b.
While we find little reason for Washington law to be applied, several factors weigh in favor of applying British Columbia law to interpret the PAU and determine Farmers' obligations. Washington has only two indirect contacts with the PAU. First, Farmers is one of the parties to the PAU and is a Washington corporation. Second, Mulcahy is a Washington resident and may be entitled to first party no-fault benefits under British Columbia law because of the PAU.
In comparison, British Columbia has many direct contacts with the PAU. First, British Columbia is a party to the PAU. Second, the risks protected against in the PAU are located in British Columbia.[6] Third, the subject matter of the PAU indicates the parties wish to have British Columbia law applied to construe the contract.[7] Moreover, the fact that British Columbia would apply its own local laws to construe Farmers' obligations under the PAU is evidence of the significant relationship British Columbia has with the contract. See RESTATEMENT § 186 cmt. b. We conclude that British Columbia law applies and now turn to whether, under British Columbia law, the PAU may be interpreted and enforced by Washington courts.
The parties cite numerous cases from sister states which they urge support their respective positions that either the PAU is enforceable only in Canada or is also enforceable in Washington under the circumstances. While these cases are not necessarily analyzed from a choice of law perspective, the results are generally consistent. More than one state court has had to resolve conflicts between state residents for accidents that occurred between them in Canada. When the only contact the case has with Canada is that the accident occurred there, several state courts have applied their own law and refused to enforce the PAU. See Perry v. Sied, 461 Mich. 680, 682, 611 N.W.2d 516 (2000); Mindell v. Travelers Indem. Co., 46 A.D.2d 263, 361 N.Y.S.2d 777 (1974). While we recognize the Perry and Mindell decisions used expansive language in these cases, they must be viewed in the context of a suit, brought only in state court, between state residents. That is not the case before us.
On the other hand, where state residents have been injured in Canada by Canadian residents and brought suit within the state, some courts have enforced PAUs. For example, the Ohio Court of Appeals has enforced a PAU. Motorists Mut. Ins. Co. v. Howard, 110 Ohio App.3d 709, 675 N.E.2d 51 (1996) (holding PAU includes no-fault coverage and may be enforced in an action brought in Ohio based on choice of law principles, the language of the policy, and the language of the PAU); accord Auto Club Ins. Ass'n v. Lozanis, 215 Mich.App. 415, 546 N.W.2d 648 (1996) (insurer subject to Ontario law by virtue of filing the PAU); but see Fiste v. Atlantic Mut. Ins. Co., 94 Ohio App.3d 165, 640 N.E.2d 551 (1994) (holding, over a vigorous dissent, that PAU is enforceable only in Canada). We find the reasoning of the Howard court persuasive and conclude that British Columbia law determines the scope of the PAU and whether Washington courts may interpret and enforce it.

APPLICATION OF BRITISH COLUMBIA LAW
We turn now briefly to the application of these principles in the very limited context of determining the scope of the PAU and whether it is enforceable outside of British Columbia. Initially, some Canadian courts interpreted the PAU as being limited to third party liability coverage. E.g., Shea v. Shea, [1985] 66 B.C.L.R. 92 (B.C.Ct.App.) (interpreting the 1964 version of the PAU and holding it applies only to third party liability coverage).[8] However, after the Shea decision *319 in 1985, the insurance superintendent changed the standard language of the PAU to ensure there is no misunderstanding regarding PAU coverage of no-fault benefits and other kinds of coverage, which are required by provincial statutes. The changed language is broad and also requires other kinds of coverage mandated by provincial statutes, such as uninsured motorist insurance and unidentified motorist coverage. E.g., Schrader v. U.S. Fid. & Guar. Co., [1987] I.L.R. ¶ 1-2173 (Ont.Div.Sup.Ct.).
Since 1990, Canadian courts have uniformly held obligations under the PAU extend to any kind of insurance coverage mandated by provincial statutes and regulations. See, e.g., Anderson, 51 B.C.L.R.2d 93; Marchand v. Alta. Motor Ass'n Ins. Co., [1994] 89 B.C.L.R.2d 293, at ¶ 4 (B.C.Ct.App.); Maligmat v. Ross, [1995] 10 B.C.L.R.3d 318, at ¶ 54 (B.C.Sup.Ct.); Healy, 44 O.R.3d 404, at 409; Wawanesa Mut. Ins. Co. v. Lindblom, [2001] 28 C.C.L.I.3d 163, at ¶¶ 29, 36 (Alta.Ct.App.); cf. Rager v. Marwick, [1997] 41 B.C.L.R.3d 145 (B.C.Ct.App.) (holding that insurers who have not filed a PAU are obligated to extend only coverage that is explicitly provided for in the insurance contract).
Pursuant to section 134(9) of the Insurance Act, foreign insurers, who file a PAU, agree to compensate their insureds according to the same terms that British Columbia residents are compensated by the ICBC when they are involved in a British Columbia motor vehicle accident. Diotte, 28 C.C.L.I.3d 125, at ¶ 15. The law in British Columbia is well settled. PAU signatories are not responsible for merely third party liability coverage as contended by Farmers in the alternative; rather, they are also responsible for first party no-fault benefits entitled by their insureds under the province's compulsory automobile insurance laws. Diotte, 28 C.C.L.I.3d 125, at ¶¶ 15, 18, 23. Additionally, it is undisputed that British Columbia's insurance law requires coverage for first party no-fault benefits up to Can$150,000. Based on the evolution of the common law in Canada and British Columbia and according to the most recent decision by a provincial appellate court, mandatory insurance requirements are determined by the substantive law of the province where the accident took place regardless of the forum in which the suit is actually litigated, especially when the insurer has engaged in maneuvering to avoid application of that substantive law. See generally THE CONTINUING LEGAL EDUCATION SOCIETY OF BRITISH COLUMBIA, BRITISH COLUMBIA MOTOR VEHICLE ACCIDENT CLAIMS PRACTICE MANUAL 11-6, -7 (2d ed.2000); see also Wawanesa Mut. Ins. Co., 28 C.C.L.I.3d 163.
Applying British Columbia law, we hold Farmers is obligated under the PAU it filed to provide Mulcahy with first party no-fault benefits up to Can$150,000 under the facts of this case.[9] Because the issue of *320 coverage under the PAU is dispositive of Farmers' obligations, we do not reach the issue of whether Farmers is obligated to provide benefits according to British Columbia law under the out of state coverage policy provision in Mulcahy's insurance contract.

BAD FAITH AND CONSUMER PROTECTION ACT CLAIMS
Mulcahy alleges several acts of bad faith by Farmers: failing to disclose possible coverage under the PAU, failing to properly investigate the facts and law, overemphasizing its own interest without equal consideration for Mulcahy's interests, compelling Mulcahy to litigate her rights under the policy, and denying her first party no-fault benefits under the PAU in accordance with British Columbia's compulsory automobile insurance law. Farmers defends its actions by claiming, as a matter of law, it could not have acted unreasonably because the issues raised are matters of first impression in Washington.
The Court of Appeals applied the summary judgment standard purportedly introduced in Ellwein v. Hartford Accident & Indemnity Co., 142 Wash.2d 766, 15 P.3d 640 (2001). Mulcahy v. Farmers Ins. Co. of Wash., No. 49657-3-I, slip op. (unpublished portion) at 25-26 (Wash.Ct.App. Nov. 25, 2002).[10] The Ellwein standard, which had been interpreted by some as creating a new summary judgment standard that benefits insurers accused of bad faith, was explicitly rejected by this court in American States Insurance Co. v. Symes of Silverdale, Inc., 150 Wash.2d 462, 470, 78 P.3d 1266 (2003).
The Court of Appeals correctly noted that "[a]cts performed in good faith under an arguable interpretation of existing law do not constitute unfair conduct violative of the consumer protection law." Mulcahy, No. 49657-3-I, slip op. at 25 (emphasis added). However, we hold it erroneously implied that acts under an arguable interpretation of existing law are, as a matter of law, always performed in good faith. See Smith v. Safeco Ins. Co., 150 Wash.2d 478, 486, 78 P.3d 1274 (2003). On remand, summary judgment is not appropriate if "reasonable minds could differ that the insurer's conduct was reasonable, or if there are material issues of fact with respect to the reasonableness of the insurer's action." Id.
Additionally, Mulcahy alleges that many of Farmers' alleged acts of bad faith also violate the CPA. Specifically, she claims Farmers' actions violate WAC 284-30-330, which defines "unfair claims settlement practices," and WAC 284-30-350, which requires full disclosure to first party claimants of all pertinent benefits, coverages, and other provisions. Because we find the Court of Appeals applied the wrong standard in dismissing Mulcahy's bad faith claims, we also hold that her CPA claims which are based, in part, upon the alleged acts of bad faith may also have been improperly dismissed. We reverse summary judgment on the bad faith and CPA claims and remand for further proceedings consistent with this opinion.

CONCLUSION
Mulcahy satisfactorily pleaded Canadian law in the trial court and briefed it on appeal. Because British Columbia has the most significant relationship to the PAU, we reverse the Court of Appeals interpretation of the PAU under Washington law and apply British Columbia law to determine Farmers' obligations under the PAU. Under the PAU and British Columbia's compulsory automobile insurance law, Mulcahy is entitled to first party *321 no-fault benefits up to Can$150,000, and Farmers' obligation to provide that coverage may be enforced by a Washington court. Because the trial court and Court of Appeals decided Mulcahy's bad faith claims by applying the wrong standard and because issues of genuine fact remain regarding her CPA claim, we reverse and remand for trial consistent with this opinion.
ALEXANDER, C.J., JOHNSON, MADSEN, SANDERS, IRELAND, BRIDGE, OWENS and FAIRHURST, JJ., concur.
NOTES
[1] PIP coverage is a form of first party no-fault benefits. First party benefits are paid to the insured. In contrast, third party benefits, such as those provided under liability coverage, are paid to someone other than the insured. No-fault benefits are payable regardless of whether the insured is at fault for the damages and injuries sustained.
[2] In addition, ICBC agreed as part of the settlement to indemnify Mulcahy in the sum of Can$15,000 representing the US$10,000 Farmers paid in PIP benefits.
[3] The record does not reflect what notice and opportunity, if any, Farmers received to participate in Mulcahy's tort action in British Columbia. However, the record does reflect that on June 27, 1994, Farmers sent a letter to ICBC requesting its name "appear on any draft or check made payable to [Mulcahy] in settlement of [her] auto damage or medical expenses." Clerk's Papers at 638. In the letter, Farmers notified ICBC of its subrogation interest in any payments made to settle injury claims arising out of the accident between their insureds and sought acknowledgement and protection of that interest from ICBC. Id.
[4] In addition to Mulcahy and Farmers, we have been assisted by amici. Upon our request, the Washington State Trial Lawyers Association Foundation and the Washington Defense Trial Lawyers submitted amici curiae briefs.
[5] We are not presented with a situation where Canadian law was not raised in the trial court nor adequately briefed on appeal. Contra Kadoranian v. Bellingham Police Dep't, 119 Wash.2d 178, 187, 829 P.2d 1061 (1992) (declining to "interpret the effect of Canadian law" on the case "[b]ecause the issue was not before the trial court, and because it [was] not adequately briefed and argued" on appeal).
[6] The PAU specifically addresses the risks associated with an insured being involved in a motor vehicle accident in British Columbia or another province or territory of Canada. See RESTATEMENT § 188 cmt. e.
[7] Despite the absence of an express designation that British Columbia law should apply, the terms of the PAU contemplate application of the laws of the province or territory where the accident occurs. See RESTATEMENT § 204 cmt. b.
[8] The underlined language represents the language added to the PAU after the Shea case to clarify the inclusion of no-fault benefits and other kinds of mandatory coverage. The parentheses include language that was deleted after the Shea case.

C. Not to set up any defence to any claim, action, or proceeding, under a motor-vehicle liability insurance contract entered into by it, which might not be set up if the contract had been entered into in, and in accordance with the law relating to motor-vehicle liability insurance contracts or plan of automobile insurance of the province or territory of Canada in which such action or proceeding may be instituted, and to satisfy any final judgment rendered against it or its insured by a court in such province or territory, in the claim, action, or proceeding, in respect of any kind or class of coverage provided under the contract or plan in respect to any kind or class of coverage required by law to be provided under a plan or contracts of automobile insurance entered into in such province or territory of Canada up to the greater of
(1) the amounts and (limit or) limits for that kind or class of coverage or coverages (of liability) provided in the contract or plan, or (but)
(2) (in any event an amount not less than the limit or limits fixed as) the minimum for that kind or class of coverage or coverages required by law to be provided under the plan or contracts of automobile insurance (which a contract of motor-vehicle liability insurance may be) entered into in such province or territory of Canada, exclusive of inter est and costs and subject to any priorities as to bodily injury or property damage with respect to such minimum amounts and (limit or) limits as may be required (fixed) by the laws of the province or territory.
Nigel P. Kent, No-Fault Benefits in British Columbia: Must Out-of-Province Auto Insurers Pay the same as ICBC?, in 13 CANADIAN JOURNAL OF INSURANCE LAW 39, 42-43 (1995) (emphasis omitted).
[9] Farmers correctly notes in its briefing to this court that the factual dispute regarding the amount of first party no-fault benefits to which Mulcahy is entitled under British Columbia's compulsory automobile insurance law is not an issue before us on review. We note in passing the general rule that, in the interests of fairness and to avoid redundant litigation, insurers, who have received notice of litigation by their insureds against tortfeasors and an opportunity to intervene, are bound by settlements between their insureds and tortfeasors. Cf. Fisher v. Allstate Ins. Co., 136 Wash.2d 240, 961 P.2d 350 (1998) (holding underinsured motorist carrier, who received notice of litigation and an opportunity to intervene, is bound by arbitration award between its insured and tortfeasor). However, we leave it in the able hands of the trial court on remand to determine whether this general rule is applicable in this particular case.
[10] The Court of Appeals did not publish that portion of its opinion regarding Mulcahy's bad faith and CPA claims.